# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-3495

CARL V. LAMB, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 24, 2007          Decided     August 7, 2008  )

*Jeffrey J. Wood* of York, Pennsylvania, for the appellant.

*Richard A. Daley*, with whom *Paul J. Hutter*, Acting General Counsel, *R. Randall Campbell*, Assistant General Counsel, *David L. Quinn*, Deputy Assistant General Counsel, and *Ralph G. Davis* were on the brief, all of Washington, D.C., for the appellee.

Before HAGEL, LANCE, and SCHOELEN, *Judges*.

LANCE, *Judge*, filed the opinion of the Court.  SCHOELEN, *Judge*, filed an opinion concurring in part and dissenting in part.

LANCE, *Judge*: The appellant, veteran Carl V. Lamb, appeals through counsel an August 18, 2005, decision of the Board of Veterans' Appeals (Board) that denied an effective date earlier than December 11, 1995, for the assignment of a compensable rating for post-traumatic stress disorder (PTSD) and rejected the appellant's motion to revise an August 1957 regional office (RO) decision on the basis of clear and unmistakable error (CUE).  The parties each filed briefs, and the appellant filed a reply brief.  Thereafter, the Court heard oral arguments in the case.  For the reasons that follow, the Court will affirm the Board's determination that the August 1957 RO decision is final.  Further, the Court holds that the Board improperly dismissed for insufficiency of pleading two separate theories of CUE.  The Court holds the Board's failure to consider Mr. Lamb's assertion of CUE on the basis of a post-1957 precedent in law to be nonprejudicial and will affirm the Board's

dismissal; however, the Court will remand to the Board Mr. Lamb's assertion of CUE in the 1957 Board decision on the basis of an incorrect application of regulations in effect at the time for adjudication consistent with this opinion.

## I. FACTS

The appellant served on active duty in the U.S. Marine Corps from August 1949 to December 1951. Record (R.) at 23. He filed his original application for benefits in December 1951 and provided the name and address of his parents in Jacksonville, Arkansas. R. at 108. In September 1952, he was granted service connection for chronic anxiety reaction, rated as 10% disabling. R. at 128. However, the appellant did not begin receiving any payments from VA pursuant to this award because his benefits were withheld until the value of those payments equaled the severance pay received at separation. R. at 8. In April 1954, VA recorded the appellant's notification to VA that he had changed his address from his parents' Jacksonville, Arkansas, address to Kings Trailer Court in Bristol, Virginia. Supplemental (Supp.) R. at 4. Mail delivered to the trailer court was received at the trailer court office to be picked up there by residents. R. at 721. While the appellant's permanent address was at the trailer court, the appellant often spent long periods away from home working temporary jobs. R. at 721.

In July 1957, the RO sent a letter to the appellant at the Bristol, Virginia, address instructing him to report for a VA examination. Supp. R. at 5. The notice letter was returned unclaimed. Supp. R. at 6. In August 1957, the RO sent another letter to the appellant stating that because he had failed to report for the scheduled examination, it was necessary to discontinue the payments on his award that had been applied to the recovery of his severance pay. R. at 136. This letter was also returned unclaimed. R. at 552. At the time his benefits were severed, the appellant had not completed the recoupment process and had not received any payments from the Secretary. R. at 8.

In December 1995, the appellant filed a claim for service connection for chronic anxiety reaction. R. at 139. In June 1996, the RO recognized service connection for PTSD, rated 10% disabling, effective December 1995. R. at 206-07. In doing so, the RO determined that the appellant's PTSD was the same condition that had been "formerly diagnosed as anxiety reaction" and that had been suspended and rated as noncompensable since August 1957. R. at 207.

2

The appellant initiated and perfected an appeal of the effective date assigned to his disability rating in the June 1996 RO decision. R. at 216, 248. He also filed a motion to revise the August 1957 RO decision on the basis of CUE, specifically alleging that he did not receive any letters relating to the suspension of his benefits because VA had not made reasonable efforts to locate him in violation of the due process clause of the Fifth Amendment to the U.S. Constitution and, therefore, he had good cause for not reporting to the scheduled examination. In a 1997 hearing before the Board, the appellant testified that he never received either the July or August 1957 letter regarding the suspension of his benefits. R. at 388.

After an extended procedural history, the Board issued the decision on appeal, which determined that there was no statutory or regulatory authority requiring VA "to issue a notice to a veteran at any location other than the last known address of record." R. at 14. Accordingly, the Board concluded that the 1957 decision was final and that the effective date assigned to the appellant's disability rating could not be earlier than the date of his 1995 claim. The Board also found that the appellant's due process argument was merely a vague allegation of error that did not rise to the level of CUE and was, in essence, an allegation that VA breached its duty to assist, which can not be the basis for revising a final rating decision based on CUE. R. at 13-15.

## II. ANALYSIS

Initially, the Court observes that it is presented with two distinct notice arguments in two distinct postures. First, the appellant argues on direct appeal of his current effective date decision that the August 1957 RO decision never became final because the Secretary failed to make constitutionally adequate efforts to provide him with notice of the decision as required by the Fifth Amendment to the U.S. Constitution.[1] In the alternative, he argues that if the 1957 RO decision is final, then the Board erred in dismissing his CUE motion, asserting that VA violated its suspension regulation by

---

[1]The Court notes that Mr. Lamb did not argue to the Board or to the Court that the decision to discontinue benefits was not a final decision based upon the VA regulation in effect at the time, which required only a *suspension* of benefits until such time as a medical examination was conducted. *See* VA regulation 1251(a) (1957) (failure to report for physical examination); *see also* VA regulation 1266 (1957) (resumption of suspended award where veteran subsequently reports for physical examination). Because the issue is not before us in this decision, the Court takes no position regarding whether any medical examination after the discontinuance of payments would operate to cause a "resumption" of "suspended" payments.

3

relying on his failure to attend a physical examination to suspend his payments because the Secretary failed to make adequate efforts to notify him of the scheduled examination, and that he had "good reason for not reporting for the examination." Appellant's Brief (Br.) at 8. At oral argument, the appellant conceded that if the 1957 decision did not become final, then it cannot be the subject of a CUE motion. Nonetheless, he argued that his notice argument might still prevail as to the consequences of failing to report for an examination, even if it failed as to the finality of the RO decision. Given that the viability of appellant's CUE argument depends on whether the 1957 RO decision became final, we turn to that issue first.

### A. The Finality of the 1957 RO Decision

It is now well established that if a claimant is not properly notified of an RO decision and how it may be appealed, then the time to appeal that decision is tolled. *See Ingram v. Nicholson*, 21 Vet.App. 232, 241 (2007); *Hauck v. Brown*, 6 Vet.App. 518, 519 (1994). In such an event, the next time the RO adjudicates entitlement to the same benefit, it is merely continuing the still-pending claim and, therefore, a Notice of Disagreement filed after proper notice of the next RO decision puts the matter into appellate status. *See Myers v. Principi*, 16 Vet.App. 228, 236 (2002). However, the finality of a prior RO decision is a factual issue that neither the Secretary nor the Court need resolve unless and until it becomes relevant to a proper claim or collateral attack seeking benefits. *See Ingram*, 21 Vet.App. at 254; *DiCarlo v. Nicholson*, 20 Vet.App. 52, 55 (2006). In this case, if the appellant is correct that the 1957 RO decision never became final because of a lack of proper notice, that would affect the date of the claim that led to the current award and, therefore, the earliest potential effective date for the award properly on appeal. Hence, the finality of the 1957 RO decision is a factual issue relevant to the claim on appeal.

"[T]he Due Process Clause provides that certain substantive rights–life, liberty, and property–cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). An essential principle of due process is that deprivation of a protected interest must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). However, "impracticable and extended searches are not required in the name of due process." *Id.* at 317. The appellant argues that the Secretary's efforts to notify him of the 1957 RO

decision did not meet the minimal requirements of constitutional due process because—after the original notice was returned undelivered—the Secretary did not attempt to contact his parents, whose address VA possessed, to determine whether they had an alternative address to reach the appellant.

Initially, the Court notes that the 1957 RO decision involved suspending a benefit that had already been awarded. Accordingly, we are not presented with the question of whether applicants for government benefits have due process rights in benefits that have not been awarded. *Cf. Edwards v. Peake*, 22 Vet.App. 29, 33 (2008) (declining to decide the issue); *Thurber v. Brown*, 5 Vet.App. 119, 123 (1993) (noting that the Supreme Court has not decided the issue). The Court also notes that the fact that the appellant never actually received any direct payments prior to his benefits being suspended, because of the offset against his separation award, is irrelevant. R. at 8. While this may explain why the appellant was not alerted to the suspension by the sudden cessation of income, it does not change the fact that he had a right to those benefits once awarded. For the reasons stated below, however, we conclude that the Secretary did not violate the requirements of due process.

Mr. Lamb informed VA in 1954 that he had changed his address from Jacksonville, Arkansas, to Virginia. That information was in his claims file in 1957. The appellant was aware of the need to keep VA informed of his current address in that he notified VA of his change of address from Arkansas to Bristol, Virginia, in 1954. At oral argument, counsel for the appellant informed the Court upon questioning that he did not contest the fact that Mr. Lamb received the 1952 RO decision granting him service connection and a 10% disability rating for anxiety disorder and that the Bristol, Virginia, address to which the notices of examination and suspension of benefits were mailed was the appellant's correct mailing address at the time they were mailed. Accordingly, there is no dispute that the Secretary used the correct address in attempting to notify Mr. Lamb of the need to present himself for a medical examination in 1957. Consequently, there is no dispute regarding whether the statutory and regulatory notice requirements in effect at the time were met. The appellant's sole contention is that, upon return of the unclaimed notice, constitutional due process required the Secretary to pursue other means of contacting Mr. Lamb, such as by attempting to contact his parents at an address in the claims file provided by him three years before and to determine whether they knew of a better way to reach him.

Initially, the Court observes that it is certainly true that when a notice letter is returned unclaimed, the Secretary must check the claimant's file to determine if another notice letter needs to be sent. *See*, *e.g.*, *Armendariz-Mata v. U.S. Dept. of Justice, Drug Enforcement Admin.*, 82 F.3d 679, 683 (5th Cir. 1996) ("When the government sends notice by mail, however, the proper inquiry is not simply whether the government sent the notice, but whether it acted reasonably under all the circumstances in relying on the mail as a means to appraise the interested party of the pending action."). If the file reveals that the address used was incorrect or has been updated, then the Secretary must resend the notice to the proper address. However, the onus is on the claimant to have a reliable address for receiving notice and to keep the Secretary informed of the address. *See Hyson v. Brown*, 5 Vet.App. 262, 265 (1993) (holding that "[i]n the normal course of events, it is the burden of the veteran to keep . . . VA apprised of his whereabouts."). It is not the responsibility of the Secretary to act as a private detective to investigate the whereabouts of a missing person.

The appellant has not presented a convincing argument as to how due process could require the Secretary to contact a claimant's parents in search of him unless it amounts to a general duty to search for a claimant who cannot be reached at his address of record. First, the appellant has not established a compelling reason to limit the Secretary's alleged constitutional duty to parents of claimants. Of course, parents of claimants might reasonably be expected to know a claimant's current whereabouts. However, the same is true of siblings, physicians, former spouses, persons who have submitted lay statements on behalf of the claimant, and others whose addresses might be in a claims file. Logically, if due process requires that the Secretary make inquiries with a claimant's parents, it also requires inquiries from any person in the claims file who might reasonably know where a claimant is. Second, there is no dispute that if the government's notice efforts result in new information, then the government must consider that information to determine if further efforts are required. *See Armendariz-Mata*, *supra*. Hence, if a response to such an inquiry results in a list of yet more individuals who might reasonably know where the claimant might be, then the Secretary would then be obligated to contact such people. Accordingly, to accept the appellant's argument that the Secretary was obligated to inquire with the appellant's parents about his possible whereabouts would require us to accept the proposition that due process includes a general obligation for the Secretary to track down a claimant who has not provided the Secretary with a reliable current address.

6

Although nothing would prevent the Secretary from making these or other efforts to locate those who failed to keep him informed of their whereabouts, such efforts are not required by the due process clause.

In support of his argument, the appellant relies upon *Small v. U.S.*, 136 F.3d 1334, 1338 (D.C. Cir. 1998). However, *Small* is distinguishable. In *Small*, the government failed to follow up when a notice of a civil asset forfeiture proceeding was returned undelivered. However, in that case the government knew of the whereabouts of the property owner, as he was in jail on criminal charges related to the civil proceeding. The notice letter was returned stating that the property owner had been transferred to a different confinement facility. Under those circumstances, the U.S. Court of Appeals for the District of Columbia Circuit held that "if the United States has some additional piece of information that a reasonable person would use to locate the claimant, it is obliged under *Mullane* to try again, unless it would be burdensome to do so." *Small*, 136 F.3d at 1338. *Small* is merely an application of *Mullane* in a unique factual circumstance. The essence of *Small* is that when the government knows the whereabouts of a person (indeed when the person is in government custody), due process requires the government to actually find and deliver notice to the person. Ceasing notice efforts based on a response that the person has been moved to another facility is plainly unreasonable. *Small* recognized, however, that the government is not required to engage in a "burdensome" search for a property owner. In fact, *Small* specifically stated: "Of course, if sending the letter again would require an 'impracticable and extended search[]' for its addressee, *Mullane*, 339 U.S. at 317, . . . then a reasonable person would not try again, and due process does not require another attempt." 136 F.3d at 1337.

Turning to this case, *Small* is consistent with our conclusion. The claimant was an adult not in government custody. He had provided VA with the address to which correspondence regarding his VA benefit should be sent and VA correctly sent the notice to the address provided. It is not reasonable to require the government in such a circumstance to search for Mr. Lamb by contacting persons known to have had prior contact with him. Consequently, we must conclude that the Secretary fulfilled his duty to notify Mr. Lamb of both the examination and the suspension of benefits; there was no violation of Mr. Lamb's Fifth Amendment due process rights; and the 1957 RO decision is final.

7

B. The Appellant's Motions to Revise the 1957 RO Decision Based on CUE

Based on our conclusion that the 1957 RO decision is final, it may be collaterally attacked through a CUE motion. The Board found that the CUE motion lacked specificity and dismissed it. The Court disagrees. The appellant's allegations of CUE are at best muddled. However, the Court believes that on close examination his April 2005 submission to VA actually alleged two separate bases for CUE in the 1957 RO decision. In dismissing the appellant's allegations of CUE, however, the Board did not discriminate between these allegations. The Court, however, will address both. *Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002) (each CUE theory is a separate matter).

In his April 2005 submission to VA, appellant's attorney (the same who represented him before this Court) articulated the CUE arguments in their entirety as follows:

> In the alternative, the veteran has argued, also in his January 30 2004, correspondence[2] that the 1957 rating reduction is the product of clear and unmistakable error under 38 U.S.C.§ 5109A. Such a claim presumes the finality of the 1957 rating reduction. Under VA Regulation 1251(A), in effect in 1957, compensation is suspended "upon the failure of a veteran without good reason to report for physical examination." Where the RO has sent notice to a veteran and it was returned as undeliverable and the record discloses other possible and plausible addresses, the burden is on the Secretary to show that the veteran lacked good reason for failing to report for the scheduled examination. *Hyson v. Brown*, 5 Vet. App. 262, 265 (1993). Where the Secretary cannot shoulder the burden, then an earlier effective date is the proper remedy. *Hyson* at 265.
>
> The RO has stated, in its October 2004 rating decision, that "there were no additional possible and plausible addresses [for the veteran] at the time of this [1957] decision." In so stating, the RO has overlooked the personnel at Kings Trailer Court, as well as the veteran's father. Both of these resources may well have possessed possible and plausible addresses for the veteran. Since the veteran had good reason for failing to report for the exam under § 1251(a), i.e. his lack of notice from the VA, the reduction of his rating in 1957 contained clear and unmistakable error. Where VA reduces veterans rating without observance of applicable law and regulation, such a rating is void ab initio. *Brown v. Brown*, 5 Vet. App. 413, 422 (1993).

Appellant's Br. 734-735.

Charitably interpreted, appellant's allegations of CUE are twofold and are stated in slightly different terms in appellant's brief to the Court. The second paragraph of appellant's argument, as

---

[2]This correspondence is not contained in the record on appeal.

amplified in his brief, is that VA suspended his disability compensation payments without making what he characterizes as the threshold determination, i.e., whether the appellant had good cause for his failure to report for the scheduled medical examination. Appellant's Br. at 9-10 ("The Board . . . failed to [decide] the threshold issue under the VA regulation (whether enumerated as 1251(A) or § 3.251) of whether the veteran had failed 'without adequate reason to report for physical examination'"). In the first paragraph of his argument before the Board, which may have been intended as a refinement of the one previously discussed, the appellant alleges that VA failed to meet its evidentiary burden to rebut the presumption that, when a veteran fails to attend a scheduled examination and VA is aware that notice of the examination was not delivered to the veteran, "*VA bears the burden* of showing that the veteran lacked adequate reason for good cause for failing to report for a scheduled examination. *Hyson v. Brown,* 5 Vet. App. 262, 233 (1993)." Appellant's Br. at 9 (emphasis in original).

Because each CUE motion "is an assertion that [VA] committed a particular clear and unmistakable error," Mr. Lamb's good cause theories are distinct and must be addressed separately. *Andre*, 301 F. 3d at 1361. The Board erred in not addressing these motions on their merits. Having found error in that the Board improperly dismissed the appeal because it found that the request to revise the 1957 suspension decision based on CUE was not adequately articulated, the Court must address whether this error is prejudicial. 38 U.S.C. § 7261(b) ("In making the determinations under subsection (a), the Court shall review the record of proceedings before the Secretary and the Board . . . and shall . . . take due account of the rule of prejudicial error."); *see also Mlechick v. Mansfield*, 503 F.3d 1340, 1345 (Fed. Cir. 2007) (The Court's statutory duty to take due account of the rule of prejudicial error "permits the Veterans Court to go outside the facts as found by the Board to determine whether an error was prejudicial").

Although the Board erred in dismissing this CUE motion, remanding it for a decision on the merits would serve no useful purpose. *See Winters v. West*, 12 Vet.App. 203, 208 (1999) (en banc) ("[A] remand is not required in those situations where doing so would result in the imposition of unnecessary burdens on the [Board] without the possibility of any benefits flowing to the appellant."); *see also Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991). "A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior . . . decision." *Russell*

*v. Principi*, 3 Vet.App. 310, 314 (1992) (en banc). This standard requires that the argument must be based on the law as it was understood at the time of the decision. The correct application of a statute or regulation as it was understood at the time does not retroactively become CUE where, subsequent to the decision challenged, there has been a change in the interpretation of the statute or regulation. *Jordan (Timothy) v. Nicholson*, 401 F.3d 1296, 1298-99 (Fed. Cir. 2005); *cf.* 38 C.F.R. § 20.1403(e) (2008) ("[CUE] does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation."). Accordingly, a recent or novel interpretation of law cannot be used to support a CUE motion, because any interpretation would not change what the law was understood to mean at the time of the original decision. *See Smith (Rose) v. West*, 11 Vet.App. 134, 137-38 (1998) (rejecting CUE motion as to 1969 RO decision based on its application of VA regulation invalidated by this Court in 1993 because RO in 1969 had applied "the law in effect at that time").

The Court notes that, as a matter of law, the appellant's allegation of CUE that relies on *Hyson* cannot support a valid CUE motion. *Hyson*, which was decided in 1993 (and citing *Ashley v. Derwinski*, 2 Vet.App. 307, 311 (1992)), found that when a termination of benefits is based on failure to report for an examination and the notice of the examination was returned to VA undelivered, the burden is on VA to demonstrate that the notice was sent to the appellant's latest address of record and that the appellant lacked adequate reason or good cause for failing to report for the scheduled examination. *Hyson* at 5 Vet.App. at 264-265. While *Hyson* might support the conclusion that the 1957 decision contains error under current caselaw, because the interpretation rendered was not in existence when the RO made its decision, its pronouncement can not establish that any error was *clear and unmistakable* based on the record and law that existed at the time of the 1957 adjudication. *See Smith*, 11 Vet.App. at 138-39; *see also Russell*, 3 Vet.App. 314. While finality is a relatively flexible concept in veterans law, when the Court issues a ruling that disagrees with the Secretary's interpretation of a regulation, that ruling does not retroactively invalidate every prior, final decision based upon the prior understanding of the law. Similarly, a CUE motion is not a proper vehicle for advancing a novel interpretation of a statute or regulation. Thus, in taking due account of the rule of prejudicial error, the Court holds that the appellant's CUE theory based on a later interpretation of

10

law, which cannot form the basis of a valid CUE motion, must fail and that any error by the Board in failing to adjudicate his motion on the merits is nonprejudicial.

The appellant also alleges that VA failed to properly apply regulations 1251(A) or § 3.251. The Court notes that he does not support his argument about the meaning of "good cause" with any authority that existed in 1957 that demonstrates that the regulation was understood as he suggests. Nor has the appellant even cited any current authority supporting his interpretation of "good cause." However, at this juncture, that is not the Court's concern. The issue before the Court is whether the allegation of CUE was pled with sufficient specificity so that, assuming its truth and legal viability, it would satisfy the three elements required to find that the challenged final decision was clearly and unmistakably erroneous. Unlike appellant's reliance on *Hyson* discussed above, there is no legal impediment to revising the 1957 RO decision *if* VA were to find that the RO had failed to properly apply the applicable regulations that were in effect at that time. Such a decision, however, is not for the Court in the first instance but for VA. *See Russell*, 3 Vet.App. at 320 (finding that the determination of whether an error constitutes CUE is for the Board to determine in the first instance); *see also Mayfield v. Nicholson*, 444 F.3d 1328, 1334 (Fed. Cir. 2006) ("[A] court reviewing an agency decision generally may not sustain the agency's ruling on a ground different from that invoked by the agency." (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943).

Although our dissenting colleague would remand both CUE motions after a finding that the Board erred in dismissing them, the appellant has not persuaded the Court that such a remand of the first CUE motion would be more than "an idle and useless formality." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969). In this case, the arguments were raised below but the Board improperly rejected them. The Court is thus obligated to "take due account of the rule of prejudicial error." 38 U.S.C. § 7261(b). *See also Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004). We reject the assertion that we are barred in our prejudicial error analysis from considering whether the appellant has demonstrated sufficient potential merit to burden the Board with reprocessing the claim. The U.S. Court of Appeals for the Federal Circuit has made clear that we must consider prejudice even if there are relevant determinations that were not made by the Board in the first instance. *Mlechick*, 503 F.3d at 1345; *see also* 38 U.S.C. § 7261(a) (the Court shall "hold unlawful and set aside decisions . . . by the Secretary [or the Board] found to be . . . in excess of statutory jurisdiction,

11

authority, or limitations"), § 7261(b). While some cases will require a remand for such determinations to be made in the first instance, the Court is not required to remand if it appears that it will be a mere formality. *See NLRB* and *Soyini*, both *supra*. On a CUE motion, an appellant may make new arguments on remand. *See Jordan v. Principi*, 17 Vet.App. 261, 271 (2003) (holding that the CUE procedure "is broad enough to allow an appellant to rephrase and provide additional argument and support for the same basic CUE argument presented before the Board."). However, it makes little sense for the Court to presume that the appellant is withholding better arguments than the facially inadequate ones presented to the Court here. Rather, to avoid piecemeal litigation, appellants must be expected to present their best arguments to the Court to demonstrate that a remand would be productive.

## C. Respect and Decorum

There is one final matter the Court must address. During oral argument Mr. Lamb's counsel referred to a rating official at a VA regional office as "some schmo." Although he was immediately corrected from the bench, his language bears further comment. This Court has now issued decisions reviewing the conduct and decisions of VA officials totaling some 21 volumes. Those decisions are often critical of judgments reached by VA. However, nowhere in those 21 volumes have we been able to find an instance where the Court engaged in an ad hominem attack on an individual adjudicator. Such conduct by counsel shows disrespect for the thousands of dedicated employees of VA who adjudicate hundreds of thousands of cases each year and does not reflect well on counsel. Such terminology also shows disrespect for this Court, which strives to provide a forum for decision making that treats all litigants and counsel with respect and dignity. We emphasize to the practitioners before this Court that such conduct is unacceptable. In the absence of evidence of misconduct, the Court presumes that everyone involved in the process of claims adjudication—including VA staff, claimants, claimants' representatives, and outside actors—acts with honesty and professionalism. Unfounded accusations or innuendo of misbehavior reflect poorly on the accuser, not the accused.

## III. CONCLUSION

On the Court's consideration of the foregoing, that part of the Board's August 18, 2005, decision finding that the August 1957 RO decision is final is AFFIRMED. That part of the Board's decision dismissing a claim of CUE based on *Hyson* is AFFIRMED; however, that part of the Board's decision dismissing a claim of CUE based on a failure to correctly apply regulations in effect in August 1957 on other grounds is REVERSED and the matter REMANDED for adjudication consistent with this decision.

SCHOELEN, *Judge*, concurring, in part, and dissenting, in part: I write separately only to express my disagreement with the portion of the majority's opinion that bifurcates the appellant's CUE motion and denies, as a matter of law, any allegation based on *Hyson v. Brown*, 5 Vet.App. 262 (1993). *See ante* at 10-11. I concur in the majority opinion to the extent that it holds that the allegations of CUE put forth by the appellant were sufficiently specific and thus should have been addressed on their merits by the Board below. *See Andrews v. Principi*, 18 Vet.App. 177, 181 (2004) ("A CUE allegation must identify the alleged error with 'some degree of specificity.'") (citing *Crippen v. Brown*, 9 Vet.App. 412, 420 (1996); *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993)); 38 C.F.R. § 20.1404(b) (2008). Specifically, I agree that the Board erred by neglecting to consider whether lack of notice of a VA medical examination could constitute an "adequate reason" for a veteran's failure to attend. *Ante* at 11; *see* 38 C.F.R. § 3.251(a) (1957). I respectfully disagree, however, with the majority's determination that the appellant raised a separate theory of CUE based on *Hyson*, which the Board may not consider in the first instance.

It is not at all clear to me that the Court can appropriately distinguish the appellant's "good cause" theory of CUE from any argument relying on *Hyson*. Rather, *Hyson* is simply one authority that the appellant cites in support of his "good cause" CUE motion, which should be considered by the Board when evaluating the merits of this motion on remand. The crux of the appellant's CUE motion rests on VA's interpretation of 38 C.F.R. § 3.251(a) – in particular, the contention that, had VA construed the appellant's lack of notice as an "adequate reason" for missing an examination under 38 C.F.R. § 3.251(a), his benefits would not have been terminated in 1957. Appellant's Brief (Br.) at 9-10 ("The Board . . . failed to [address] the threshold issue under the VA regulation . . . of whether

the veteran had failed 'without adequate reason to report for physical examination.'" (quoting 38 C.F.R. § 3.251(a))); *see also id.* at 8 ("Had [VA] applied the regulation properly, it would have realized that the appellant had good reason for not reporting for the examination scheduled . . . i.e.[,] that he did not receive the notice to report."). Nothing in the appellant's brief or the record suggests that the appellant intended to raise a distinct theory of CUE based on a single case. He simply cites *Hyson* for the proposition that "[w]here the termination of benefits is at issue and notice of a scheduled examination has been returned, the VA bears the burden of showing that the veteran lacked adequate reason or good cause for failing to report for a scheduled examination." Appellant's Br. at 9 (emphasis omitted).

The majority acknowledges that the nature of the appellant's CUE "claims" is far from clear. *See ante* at 8 (noting that "[t]he appellant's allegation of CUE is at best muddled," but "[c]haritably interpreted, [his] allegation of CUE is twofold"). Nonetheless, it goes on to decide the merits of his "claim." *Ante* at 10 (concluding that "as a matter of law, the appellant's allegation of CUE that relies on *Hyson* cannot support a valid CUE motion"). The majority's finding that the appellant was not prejudiced by the Board's failure to consider an alleged "theory" of CUE based on *Hyson* effectively precludes VA from hearing any related future argument, because there is now a final denial of this portion of his CUE motion by the Court. *See Link v. West*, 12 Vet.App. 39, 44 (1998) ("Under the principle of res judicata, '[o]nce there is a final decision on the issue of [CUE] . . . that particular claim of [CUE] may not be raised again.'" (quoting *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc))).

Further, I cannot agree that this Court is in the position to find, as a matter of law, that the appellant failed to demonstrate CUE in the 1957 RO decision. It is well established that the Court has only limited authority to review final decisions of the Board on the basis of CUE. *See Russell*, 3 Vet.App. at 315. Rather, the Court's jurisdiction over the appellant's CUE motion is limited to a determination of whether he pled CUE with sufficient specificity, a question that we consider de novo. *See Andrews*, 18 Vet.App. at 182 ("There are only two circumstances, relating to a CUE matter, where the Court applies a de novo standard of review. The first is to decide whether the appellant, as a matter of law, has presented a valid CUE allegation." (citing *Phillips v. Brown*, 10 Vet.App. 25, 30 (1997))). The majority acknowledges this limitation on our jurisdiction, but attempts

14

to circumvent it by asserting that we are obligated to "take due account of the rule of prejudicial error." *Ante* at 11 (quoting 38 U.S.C. § 7261(b); *Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004)).

Our caselaw clearly prohibits the Court from conducting a de novo review of the merits of an appellant's CUE motion, even while assessing prejudice. *See Andrews*, 18 Vet.App. at 181-82 (declining to apply a de novo standard of review to the Board's denial of motions to revise on the basis of CUE). The Court may assess only whether the Board's denial of a CUE motion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Id.* at 181 (citing 38 U.S.C. § 7261(a)(3)(A)); *Archer v. Principi*, 3 Vet.App. 433, 437 (1992); *see also Russell*, 3 Vet.App. at 320 (noting that the determination of whether an error constitutes CUE is a "task for the Board in the first instance," as it is "not appropriate for [an appellate court] to make a de novo finding [of material fact] based on the evidence" (quoting *Webster v. Derwinski*, 1 Vet.App. 155, 159 (1991)). The majority's analysis results in precisely that which our caselaw prohibits. It is important to note that the Board in this case did not deny the appellant's CUE motion on the merits, but rather dismissed it based on a pleading insufficiency. R. at 16, 19. Absent a Board decision adjudicating the merits of his motion, we lack the authority to resolve those issues sua sponte. *See Russell*, 3 Vet.App. at 315 ("[T]he issue [of CUE] must have been adjudicated below. The necessary jurisdictional 'hook' for this Court to act is a decision of the [Board] on the specific issue."); *cf. Mayfield v. Nicholson*, 444 F.3d 1328, 1334 (Fed. Cir. 2006) ("[A] court reviewing an agency decision generally may not sustain the agency's ruling on a ground different from that invoked by the agency." (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Bivings v. U.S. Dep't of Agric.*, 225 F.3d 1331, 1335 (Fed. Cir. 2000))). The majority states that it is simply affirming the decision below as part of the routine application of the rule of prejudicial error. However, this Court has never extended the application of prejudicial error this far. I believe that once the Court finds, as it does here, that the appellant has pled CUE with sufficient specificity, it must remand the matter for consideration by the Board in the first instance. I simply cannot accept the majority's position that we may disregard the established confines on our jurisdiction, even in the context of assessing prejudice.

In sum, I believe that the appropriate remedy in this case is to vacate the Board decision in part and remand the appellant's entire CUE motion to the Board for adjudication on the merits. Because the appellant has pled CUE with sufficient specificity, *see Andrews*, *Crippen*, and *Fugo*, all *supra*, the Board must be given the opportunity to evaluate the merits of this motion, including any arguments based on *Hyson*, if the appellant chooses to assert them. Further, I do not believe that it is appropriate for the Court to assess the merits of the appellant's CUE motion in the Board's stead. Therefore, I must respectfully dissent, in part, from the majority opinion.