# United States Court of Appeals for the Federal Circuit

2008-7111

PATRICIA L. AMBERMAN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.


Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

L. Misha Preheim, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel on the brief were David J. Barrans, Deputy Assistant General Counsel, and Michael G. Daugherty, Attorney, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge William A. Moorman

# United States Court of Appeals for the Federal Circuit

2008-7111

PATRICIA L. AMBERMAN,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 06-1160, Judge William A. Moorman.

_____

DECIDED:    June 29, 2009

_____

Before LOURIE, GAJARSA, and PROST, Circuit Judges.

GAJARSA, Circuit Judge.

This case involves the appropriate disability rating for a veteran, Patricia Amberman, suffering from two service-connected mental disorders—bipolar affective disorder and post-traumatic stress disorder ("PTSD")—the symptoms of which may overlap. Ms. Amberman appeals from a final decision of the Court of Appeals for Veterans Claims ("Veterans Court") which affirmed the finding of the Board of Veterans Appeals ("Board") that her disorders had properly been rated together. Because the Veterans Court properly interpreted 38 C.F.R. § 4.14 to prohibit separately rating the same symptoms merely because those symptoms have multiple causes, we affirm.

BACKGROUND

Ms. Amberman served on active duty in the Army from August 1977 to October 1980. In 1981, she was granted service-connection for manic depression, but assigned a noncompensable disability rating. After Ms. Amberman was hospitalized in 1993, her condition was reclassified as bipolar affective disorder with alcohol dependence, and she was assigned a 30% disability rating. Ms. Amberman subsequently filed a claim for service connection for PTSD in 1995. After undergoing a VA examination in 1998, Ms. Amberman's original bipolar diagnosis was confirmed, and she was also found to suffer from PTSD. Her claim for service connection for PTSD was denied by the Regional Office ("RO") in 1999, but granted by the Board on appeal in 2001. The Board remanded her claim to the RO for consideration of "the impairment from the PTSD in [the RO's] evaluation of the veteran's service-connected psychiatric disability."

On remand, the RO assigned a 70% disability rating for the bipolar disorder, and a noncompensable rating for the PTSD. Ms. Amberman appealed, and the Board remanded for the RO to "adjudicate the issue of whether the May 2002 rating decision assigning a separate rating for PTSD was based on clear and unmistakable error." In November 2002, the RO determined that it had committed clear and unmistakable error ("CUE") by rating the two disorders separately. As a result, it revised its prior decision, rated the two disorders together, and assigned a 70% disability rating. In March 2003, the Board increased Ms. Amberman's disability rating to 100% upon finding total disability based on individual unemployability.

Ms. Amberman subsequently appealed both the effective date of the 100% rating, and the RO's conclusion that it constituted CUE to rate her disorders separately

and combine the ratings. In December 2005, the Board affirmed the CUE finding, stating that "the record did not contain competent clinical evidence which distinguished manifestations of the service-connected PTSD from the manifestations of the service-connected bipolar affective disorder with alcohol dependence," and remanded for an evaluation of the appropriate effective date. Ms. Amberman appealed to the Veterans Court, which affirmed the finding of CUE in the RO decision that had separately rated her bipolar disorder and PTSD. The Veterans Court entered its judgment on April 1, 2008, and Ms. Amberman filed her notice of appeal on May 27, 2008. We have jurisdiction over this appeal pursuant to 38 U.S.C. § 7292(c) (2006).[1]

ANALYSIS

By statute, this court has limited authority to review the Veterans Court's interpretation of a regulation. See 38 U.S.C. § 7292(d)(1) (2006); Sursely v. Peake, 551 F.3d 1351, 1354 (Fed. Cir. 2009). In particular, this court may reverse regulatory interpretations only if the interpretation is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." 38 U.S.C. § 7292(d)(1). We are also precluded from reviewing factual

---

[1] This appeal concerns Ms. Amberman's future access to benefits in the event that certain rating decisions are changed. It is worth noting that she currently has been assigned a 100% rating, and that this appeal does not affect the effective date of that determination. She seeks separate ratings for her two service-connected disorders because if her two disorders are rated separately, and each is rated at a sufficiently severe level, she might become entitled to special monthly compensation under 38 U.S.C. § 1114(s) (2006).

determinations relied on by the Veterans Court absent a constitutional issue. Id. § 7292(d)(2).

The regulation at issue here, 38 C.F.R. § 4.14, deals with the appropriate rating to be assigned to a veteran whose service-connected disabilities are subject to multiple classifications. It provides in full:

> The evaluation of the same disability under various diagnoses is to be avoided. Disability from injuries to the muscles, nerves, and joints of an extremity may overlap to a great extent, so that special rules are included in the appropriate bodily system for their evaluation. Dyspnea, tachycardia, nervousness, fatigability, etc., may result from many causes; some may be service connected, others, not. Both the use of manifestations not resulting from service-connected disease or injury in establishing the service-connected evaluation, and the evaluation of the same manifestation under different diagnoses are to be avoided.

38 C.F.R. § 4.14 (2008). Ms. Amberman's principal argument is that her separately diagnosed bipolar affective disorder and PTSD do not constitute the "same disability" as contemplated by section 4.14 and therefore should have been rated separately.

In general, the statutory structure of disability benefits for veterans seeks to compensate veterans who are injured in service. 38 U.S.C. §§ 1110, 1131 (2006) ("For disability resulting from personal injury suffered or disease contracted in line of duty, . . . the United States will pay to any veteran thus disabled . . . compensation as provided in this subchapter . . . ."). The Secretary of Veterans Affairs is charged with administering these benefits, 38 U.S.C. § 1155 (2006), and has promulgated disability rating tables that "represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." 38 C.F.R. § 4.1 (2008). Pursuant to statute and regulation, each

disabled veteran receives a single disability rating, which determines the amount of compensation the veteran will receive. 38 U.S.C. § 1155 ("The Secretary shall adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries or combination of injuries."); id. § 1114 (setting out the amount of compensation available for each disability rating). "The basis of disability evaluations is the ability of the body as a whole, or of the psyche . . . to function under the ordinary conditions of daily life including employment." 38 C.F.R. § 4.10. With respect to mental health disorders, the amount of impairment is measured by the social and occupational difficulties caused by the veteran's disorder. See id. § 4.130. Although different diagnostic codes are used for different disorders, almost all psychiatric disorders are rated based on the same criteria. Id.

Ordinarily, separately diagnosed injuries are rated individually. Because disability compensation is based on the entire person of the veteran, the ratings are then combined into a single rating as set forth at 38 C.F.R. § 4.25 to determine the overall impairment of the veteran. Consistent with that rationale, there is an exception to the ordinary process of separately rating and then combining ratings: VA regulations caution against making multiple awards for the same physical impairment simply because that impairment could be labeled in different ways. Id. § 4.14. It is the veteran's overall disability that is relevant, not the name of the causative disorder or disorders. When two ratings covering the same disability are combined, it is called "pyramiding." Id.

This court has had little opportunity to address the meaning of section 4.14. The Veterans Court, however, has done so. In Esteban v. Brown, the Veterans Court was

presented with a veteran who had suffered a service-connected facial injury. 6 Vet. App. 259 (1994). That injury resulted in (1) disfigurement, (2) painful scars, and (3) muscle damage that made it difficult to chew. Id. at 261. Any of these three problems, taken alone, would have been subject to a 10% disability rating, and each would have been rated under a different diagnostic code. Id. at 260. The Board applied section 4.14 and determined that Mr. Esteban could receive only a single rating. The Veterans Court reversed. Because each diagnostic code dealt with different symptoms (cosmetic issues, pain, and difficulty chewing, respectively), the Veterans Court held that they did not constitute the "same disability" or "same manifestation," and therefore section 4.14 was inapplicable. Id. at 261–62. The Veterans Court explained that "[t]he critical element is that none of the symptomatology for any one of these three conditions is duplicative of or overlapping with the symptomatology of the other two conditions." Id. at 262. We agree with the Veterans Court that two defined diagnoses constitute the same disability for purposes of section 4.14 if they have overlapping symptomatology.

We recognize that bipolar affective disorder and PTSD could have different symptoms and it could therefore be improper in some circumstances for the VA to treat these separately diagnosed conditions as producing only the same disability. In this case, however, the Veterans Court found that there were no manifestations of one mental disorder that were not also manifestations of the other. This is a factual finding that is beyond our purview. To the extent Ms. Amberman believes that the facts are otherwise, the Board expressly provided that if "the record ever subsequently contains competent clinical evidence which distinguishes manifestations of the service-connected PTSD from manifestations of the service-connected bipolar affective disorder

with alcohol dependence, the disabilities may be assigned separate ratings." We agree with the Veterans Court's decision to affirm the Board's finding of CUE, as it properly applied the standard adopted above, and previously set out in Esteban.

Ms. Amberman argues that the two mental disorders cannot be the same disability because "[b]ased on the undisputed facts concerning the timing of the separate diagnoses and the very different circumstances which gave raise [sic] to these different psychiatric diseases, there was no factual or legal basis for these separate illnesses to be evaluated as producing only the same disability." Appellant's Br. 15–16. This argument fails, because it focuses on the cause of the disorder, rather than the manifestations of the disorder. Section 4.14 clearly contemplates that several separately diagnosed disorders may have a single manifestation, and it clearly prohibits the VA from rating that manifestation for each disorder. See 38 C.F.R. § 4.14 ("[T]he evaluation of the same manifestation under different diagnoses [is] to be avoided.").

Finally, at oral argument Ms. Amberman's counsel presented an entirely new theory of error. Oral Arg. 3:30–4:20, March 30, 2009, available at http://oralarguments.cafc.uscourts.gov. Counsel argued that because section 4.14 depends on an evaluation of the symptoms—a question of weighing facts—the RO's decision whether to apply it can never constitute CUE. Ordinarily, we deem counsel's failure to raise an argument in its opening brief a waiver of that argument. SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1320 (Fed. Cir. 2006). In any case, we find this argument unpersuasive—a misapplication of section 4.14 can constitute CUE. CUE may be found based upon an error of fact or law. See 38 C.F.R. § 20.1404(b) (2008) (explaining that when a veteran asserts CUE the motion must specifically identify

the error of fact or law). This court has held that to constitute CUE "the error must have been made on the record as it existed at the time the decision was made." Cook v. Principi, 318 F.3d 1334, 1343 (Fed. Cir. 2002) (en banc). Therefore, any fact-based CUE finding necessarily results from the VA identifying an error in how it initially weighed evidence, based on the same record. Thus, Ms. Amberman's argument fails.

## CONCLUSION

For the foregoing reasons, the decision of the Veterans Court is affirmed.

## AFFIRMED

## COSTS

No costs.