# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-3766

ROCCO V. PERCIAVALLE, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 12, 2019       Decided September 27, 2019)

*Kenneth H. Dojaquez*, of Columbia, South Carolina, for the appellant.

*Shereen M. Marcus*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, GREENBERG, and TOTH, *Judges*.

TOTH, *Judge*: Clear and unmistakable error (CUE) "does not include the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation." 38 C.F.R. § 20.1403(e) (2019). Army veteran Rocco Perciavalle's CUE motion was denied after the Board determined that the allegation of error was based on a changed interpretation of regulation. Finding that § 20.1403(e) foreclosed his challenge, the Board discussed the issue no further. This case examines whether our holding in *Esteban v. Brown*, 6 Vet.App. 259 (1994), along with a VA General Counsel opinion pertaining to the appropriate use of separate ratings for certain conditions at issue here, effected a change in interpretation of law within the meaning of § 20.1403(e). Because a changed interpretation necessarily requires the existence of an antecedent interpretation from which a later interpretation departs, and because no prior interpretation existed, we hold that *Esteban* and the VA opinion did not amount to a change in interpretation.

# I. BACKGROUND

## A. Separate Ratings

"Ordinarily, separately diagnosed injuries are rated individually." *Amberman v. Shinseki*, 570 F.3d 1377, 1380 (Fed. Cir. 2009). There are instances, though, where "the medical evidence is such that reasonable arguments may be made for rating the disability under two or more possible diagnostic codes." *Brady v. Brown*, 4 Vet.App. 203, 206 (1993). In these situations, the Board must "weigh the evidence and make an informed choice as to which diagnostic code provides the most appropriate method for rating the veteran's disability." *Id*. "Recognizing the difficulties inherent in such circumstances," *id*., VA issued regulations that "caution against making multiple awards for the same physical impairment simply because that impairment could be labeled in different ways," *Amberman*, 570 F.3d at 1380. In short, awarding compensation for the same impairment under various diagnostic codes is known as "pyramiding," and under VA regulations, this practice "is to be avoided." 38 C.F.R. § 4.14 (2019).

In *Esteban*, this Court recognized that separate ratings were permissible for different diagnoses of the same disability as long as the conditions diagnosed shared no symptomology. 6 Vet.App. at 262. VA assigned the veteran in that case a single 10% rating for facial scars from an accident in service. *Id*. at 259–60. When he later brought an increased rating claim, the Board conceded that he could satisfy the minimum rating criteria for any of three diagnostic codes because his injury resulted in different functional problems: disfigurement, painful scars, and muscle damage. *Id*. at 260. Yet the Board determined that he could only be rated under one of the diagnostic codes. *Id*.

*Esteban* reversed the Board's decision because none of the relevant diagnostic codes provided that he could not be rated separately for the other conditions, and his conditions were "to be rated separately unless they constituted the 'same disability' or the 'same manifestation' under 38 C.F.R. § 4.14." *Id*. The "critical element," we held, was that none of the symptomatology for any one of the conditions was duplicative of or overlapping with the symptomatology of the other two. *Id*. at 262.

Three years later, in 1997, VA's General Counsel issued a guidance opinion interpreting the ratings schedule as allowing separate ratings for the conditions at issue here—arthritis and instability in the same knee. VA Gen. Coun. Prec. 23-97 (July 1, 1997). The narrow question at issue was whether 38 C.F.R. § 4.71a authorized multiple ratings under diagnostic codes (DC)

5003-5260 (limitation of motion due to arthritis) and 5257 (instability of the knee). The agency determined that, since "the plain terms of DC 5257 and 5003 suggest that those codes apply either to different disabilities or to different manifestations of the same disability, the evaluation of knee dysfunction under both codes would not amount to pyramiding under section 4.14." *Id*. VA recognized that it was the first time the agency assumed an official position on the matter, as the opinion acknowledged that it was aware "of no formal position taken by the Veterans Benefits Administration on this issue" before then. *Id*.

B. Facts

Mr. Perciavalle served in the Army from 1962 to 1964 and underwent surgery during that period to treat his injured left knee. VA awarded service connection in 1966 for residuals of the injury and assigned a 10% rating under DC 5259, which, then as now, compensates veterans for removal of cartilage from the knee. *See* 38 C.F.R. § 4.71a, DC 5259 (2019). In 1971, he filed a claim for an increased rating; VA reexamined him that year but denied his request. He did not appeal.

In 2015, Mr. Perciavalle filed a motion to revise the 1971 decision. Final decisions may be revised if they contain CUE. *Simon v. Wilkie*, 30 Vet.App. 403, 407 (2018). CUE, in turn, is established if "the correct facts, as they were known at the time, were not before VA, or the statutory and regulatory provisions extant at the time were incorrectly applied." *Id.* Additionally, the alleged error must be "undebatable, rather than a mere disagreement with how the facts were weighed," and it must have "manifestly changed the outcome of the decision." *Id*. (quotes omitted).

Mr. Perciavalle grounded his CUE motion on the contention that he should have been rated under DC 5257 for slight instability of the knee and separately under DC 5003-5260 for limitation of motion of flexion and discomfort (pain) secondary to arthritis. He alleged that an x-ray report obtained during a 1971 VA examination clearly indicated arthritis in his left knee that decreased his range of motion. R. at 102. He also claimed that the evidence in 1971 showed that he had slight instability in the knee, and so, while a rating based solely on residuals of the surgery may have been appropriate in 1966, the Board was obligated to rate him separately for slight instability and limitation of motion based on the evidence of record in 1971.

VA denied his CUE motion, stating that, in 1971, a policy "allowing us to assign separate evaluations for instability was not in effect at that period of time." R. at 94. Mr. Perciavalle appealed to the Board, maintaining his CUE theory and arguing that the plain language of the

3

regulations has always allowed for separate ratings for instability and limitation of motion. R. at 13–14.

## C. Board Decision

In a September 2017 decision, the Board found Mr. Perciavalle's argument foreclosed by § 20.1403(e) and denied his CUE motion as a matter of law.[1] The Board centered its analysis on § 4.14, the anti-pyramiding regulation prohibiting the evaluation of the same disability or manifestation under different diagnostic codes. It found that not until this Court's holding in *Esteban* was § 4.14 interpreted to permit separate ratings for distinct, non-overlapping symptomatology of the same underlying injury. It further found that VA did not issue its General Counsel opinion permitting separate ratings for arthritis and instability until 1997.

The Board did not discuss the language of the relevant diagnostic codes as they stood in 1971. It merely said that the veteran had not offered "any evidence that, in July 1971, VA interpreted the rating schedule to allow for separate ratings for limitation of motion and instability of the same knee." R. at 5. The Board concluded that *Esteban* and the General Counsel opinion constituted a changed interpretation of VA regulations. And, because a changed interpretation of an existing regulation cannot constitute CUE and that was the only basis on which Mr. Perciavalle sought revision of the 1971 decision, the Board denied his motion as a matter of law.

## II. ANALYSIS

In reviewing Board decisions evaluating allegations of CUE in prior final decisions, the Court "cannot conduct a plenary review of the merits of the original decision." *Simon*, 30 Vet.App. at 408 (quotes omitted). Instead, review of a Board decision finding no CUE is limited to determining whether that finding was "arbitrary, capricious, an abuse of discretion, or otherwise

---

[1] The Court notes that the regulation cited by the Board, 38 C.F.R. § 20.1403(e), governs in cases where the Board is reviewing a prior *Board* decision for CUE. Where the Board (or VA) reviews a prior *VA* decision for CUE, the appropriate regulation is 38 C.F.R. § 3.105(a). That is the case here. However, § 20.1403 was promulgated after § 3.105(a) and reflects congressional intent to codify the body of law that had developed over many years interpreting the more general provisions of § 3.105(a). *See Disabled American Veterans v. Gober*, 234 F.3d 682, 698–99 (Fed. Cir. 2000) (discussing the unique history of the regulations governing CUE). Accordingly, § 20.1403 provided more specific guidance as to the evaluation of CUE and, for that reason, the two regulations have often been used interchangeably—even by this Court. *See, e.g.*, *Lamb v. Peake*, 22 Vet.App. 227, 235 (2008). As of February 19, 2019, however, § 3.105(a) was amended to reflect the same language found in § 20.1403, including the specific provision at issue here, § 20.1403(e). *See* 84 Fed. Reg. 138, 167–68 (Feb. 19, 2019); 38 C.F.R. § 3.105(a)(1)(iv) (2019). Neither party has suggested that §§ 3.105 and 20.1403(e) have been or should be interpreted differently or that § 3.105(a)'s modification impacts our analysis today. Accordingly, we cite to § 20.1403(e).

not in accordance with law," 38 U.S.C. § 7261(a)(3)(A), and whether it was supported by adequate reasons and bases on all material issues of fact and law, 38 U.S.C. § 7104(d)(1).

## A. Change in Interpretation

On its face, the question of whether there has been a change in interpretation with respect to VA's regulations appears to be a mixed question of fact and law. Normally, in such cases, the Board's "determination of disputed facts or the application of established law to the facts of a particular case without creating precedent are issues of material fact subject to review by the Court . . . under the clearly erroneous standard." *Lennox v. Principi*, 353 F.3d 941, 945 (Fed. Cir. 2003). However, where, as here, there is no "established law" in the form of statute, regulation, or precedential court decision determining what constitutes a change in interpretation, the Board's factual ruling involves the application of a novel legal question. In such cases, the "relevant legal principle" is "given meaning through its application to the particular circumstances of the case" and the clearly erroneous standard does not apply. *Id*.

Here, the factual findings in dispute—whether a prior interpretation existed and whether there was a change in interpretation of VA's regulation, are determinations that the Board could only make by addressing legal questions in the first instance, rather than merely applying "established law" to disputed facts. We thus review the Board's findings de novo.

Neither federal statute nor VA regulations define what constitutes a "change in the interpretation" of a statute or regulation. With no express statutory or regulatory guidance, we employ the basic practice of textual construction whereby words assume "their ordinary, contemporary, common meaning," which may be derived from general use dictionaries. *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014).

In its basic definition, "change" means "to make different in some particular; alter; transform; to give a different position, course, or direction to; to replace with another; to make a shift from one to another; switch . . . ." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 206 (11th ed. 2014). Another dictionary provides an even simpler formulation, defining "change" as: "make or become different" and presents an example of the term used with a direct object: "*a proposal to change the law*." NEW OXFORD AMERICAN DICTIONARY 289 (3d ed. 2010) (emphasis in original).

In plain terms, then, a "change in the interpretation" necessarily requires the existence of a prior interpretation that is changed in some fashion—whether modified, further developed, or replaced in whole. As a matter of plain language, a changed interpretation cannot be the "first

commentary" on a regulation or statute as there exists no precursor interpretation that the latter modifies, alters, or replaces. *See Jordan v. Nicholson*, 401 F.3d 1296, 1298 (Fed. Cir. 2005) (noting that VA's regulation interpreting 38 U.S.C. § 1111 constituted its "initial interpretation" of that statute). And, although it can be argued that an initial interpretation constitutes a change from having no formal definition at all, this is not the same as a change in the substance of a preexisting interpretation.

VA's General Counsel opinion readily acknowledged that it was the first occasion where the agency interpreted the rating schedule to allow for separate ratings for limitation of motion and instability of the same knee. To that end, the opinion noted that: "We know of no formal position taken by the Veterans Benefits Administration on this issue." R. at 55. This point is dispositive: there can be no "change" in interpretation absent an existing interpretation from which a later interpretation deviates. In glossing over this admission, the Board erred in finding that the General Counsel opinion constituted a change in interpretation when the opinion itself acknowledged that no antecedent interpretation existed.

Likewise, our holding in *Esteban* cannot be deemed a change in interpretation. On its own terms, *Esteban* did not purport to introduce a definitive interpretation of § 4.14 but merely held that the Board's reading of the regulation was too broad in that case, as rating the veteran's condition under separate diagnostic codes did not constitute pyramiding under the plain language of the regulation. *Esteban* did not cite to any formal interpretation on VA's part that it repudiated but, citing to the factual findings in that case, merely noted earlier cases from this Court that read the regulation the same way when applied to similar facts. *Esteban*, 6 Vet.App. at 261 (discussing *Fanning v. Brown*, 4 Vet.App. 225 (1993)). In short, *Esteban* neither proposed an interpretation of a regulation nor cited any existing interpretation.

Additionally, *Esteban* presents a marked contrast to our ruling in *Lamb v. Peake*, 22 Vet.App. 227, 234–36 (2008), where the Court suggested that an intervening court decision constitutes a change in the law that forecloses a CUE motion. In *Lamb*, the veteran's CUE motion rested upon this Court's holding in *Hyson v. Brown*, 5 Vet.App. 262, 265 (1997), which imposed a duty on VA under 38 C.F.R. § 3.655 to show that the veteran lacked good cause to miss a medical appointment. The regulation itself did not expressly impose such a burden on VA and so the Court's holding was deemed a change in interpretation of that regulation insofar as it imported an adjudicatory factor into the regulation that did not derive from the plain language. The Court

6

rejected Mr. Lamb's argument in that case because the rule expressed in *Hyson* didn't reflect "the law as it was understood at the time of the decision" being challenged. *Lamb*, 22 Vet.App. at 234-35. By contrast, *Esteban* did not introduce a new burden of proof or impose a new factor into how a regulation should be applied—it merely ruled that the Board erred by reading § 4.14 as mandating an outcome that did not derive from the plain language of the regulation.

### B. Prejudicial Error and CUE

The Board erred when it concluded that § 20.1403(e) foreclosed Mr. Perciavalle's motion as a matter of law. Merely finding an error, however, is not enough for him to prevail. The Court is required by statute to consider whether this error prejudiced him. 38 U.S.C. § 7261(b)(2); *Simmons v. Wilkie*, 30 Vet.App. 267, 277 (2018). The veteran generally carries the burden of demonstrating such prejudice. *Id.* at 280.

In determining whether a claimant has shown prejudicial error, the Court assesses whether the error disrupted the essential fairness of the adjudication, either by preventing effective participation in the adjudicative process (procedural prejudice) or by affecting the outcome of the determination (substantive prejudice). *Id.* at 279. This inquiry is case-specific and based on examination of the individual record rather than rigid rules or presumptions, although the Court can make non-binding generalizations about the types of errors that typically prove harmful to claimants and may consider the "natural effects" of such error within the specific factual circumstances in which the error arose. *Shinseki v. Sanders*, 556 U.S. 396, 411-12 (2009); *Simmons*, 30 Vet.App. at 280.

In *Simmons*, the Court noted a nonexhaustive list of errors that affect the essential fairness of the adjudicative process, as they deprive claimants of a meaningful opportunity to participate in the adjudication of their claims. *See id.* at 281-82 (compiling cases). Specifically, the Court noted that VA's failure to provide notice of the evidence necessary to substantiate a claim, *see Vazquez-Flores v. Shinseki*, 24 Vet.App. 94, 105-07 (2010); *Overton v. Nicholson*, 20 Vet.App. 427, 435 (2006), and failure to provide a required hearing, *see Arneson v. Shinseki*, 24 Vet.App. 379, 388-89 (2011), had the natural effect of depriving claimants of meaningful participation in the VA adjudicatory process. *See Simmons*, 30 Vet.App. at 282. The Court found these errors prejudicial because they prevent claimants from availing themselves of their opportunity to be heard during the adjudicative process. *Id.* at 281-83.

We use this nonexhaustive list to guide our case-specific prejudicial error analysis here and conclude that the Board's error with respect to his CUE motion prejudiced Mr. Perciavalle. The Board wrongly foreclosed Mr. Perciavalle's CUE motion because it determined that § 20.1403(e), as a matter of law, precluded an assertion of error based on a change of law. As a result, the Board did not consider the merits underlying his motion, but instead concluded that Mr. Perciavalle was legally barred from making such an allegation of error because, by definition, his allegation could not be CUE. However, as we explained above, the Board erred in categorically disregarding the motion—Mr. Perciavalle's CUE motion was not, contrary to the Board's conclusion, based on a change of law.

The Court finds the Board's error prejudicial in this case because the Board wrongly categorized his motion as precluded by law, thus preventing him from receiving a meaningful opportunity to participate in the adjudicative process. *See Simmons*, 30 Vet.App. at 285 (stating that the Court's case-specific analysis "must be guided by whether essential fairness was disrupted by the error, usually demonstrated by determining whether the error affected the Board's ultimate decision *or prevented the claimant for effectively participating in the process*") (emphasis added). For this reason, remand is the appropriate course for the Board to properly adjudicate the CUE motion. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law"); *see also Arneson*, 24 Vet.App. at 389 (remanding appeal when the Board error deprived the veteran of meaningful participation in the processing of his claim).

### III. CONCLUSION

We REVERSE the Board's determination that Mr. Perciavalle's CUE motion was prohibited as a matter of law because it depended on a changed interpretation of law. The September 18, 2017, Board decision is VACATED and the matter REMANDED for further consideration consistent with this opinion.