Citation Nr: 1518728 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 10-10 091 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUES

1. Entitlement to service connection for residuals of allergic reaction to penicillin, claimed as allergies and infections.
 
2. Entitlement to service connection for a skin disease, to include as due to exposure to Agent Orange.
 
3. Entitlement to service connection for an acquired psychiatric disorder, to include anxiety, adjustment disorder, and depression.

4. Entitlement to an effective date earlier than October 18, 2007, for the grant of service connection, and a rating in excess of 50 percent for posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Todd S. Hammond, Attorney

WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

R.M.K., Counsel


INTRODUCTION

The Veteran had active service from May 1966 to May 1968. 

This case comes before the Board of Veterans' Appeals (Board) from a September 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon. 

In connection with his claim, the Veteran testified before the undersigned Veterans Law Judge (VLJ) at a Travel Board hearing at the RO in June 2013. A copy of the transcript is associated with the physical claims file.

This appeal was processed using a physical claims file, Virtual VA, and Veterans Benefits Management System (VBMS) paperless claims processing systems. Accordingly, any future consideration of this appellant's case should take into consideration the existence of these records. The Board has reviewed these records.

When this case was previously before the Board in November 2013, it was decided in part and remanded in part for additional evidentiary development. It has since been returned to the Board for further appellate action.

In a rating decision in October 2014, the RO granted service connection for PTSD with an evaluation of 50 percent from the date of service connection, October 18, 2007. In a statement in December 2014, associated with VBMS, the Veteran disagreed with the effective date and the assigned rating. As the RO has not yet issued a statement of the case addressing the claims, the Board is required to remand the claims. Manlicon v. West, 12 Vet. App. 238, 240-41 (1999).

The issues of entitlement to service connection for an acquired psychiatric disorder, to include anxiety, adjustment disorder, and depression, and entitlement to an earlier effective date and increased rating for PTSD are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The most competent and probative evidence of record does not show that the Veteran has residuals of allergic reaction to penicillin, claimed as allergies and infections.

2. An allergy to a medicine is not a disability for VA purposes.

3. The most competent and probative evidence of record does not relate a current skin disease to active service to include as due to Agent Orange exposure.


CONCLUSIONS OF LAW

1. The criteria for service connection for allergies, claimed as infections, have not been met. 38 U.S.C.A. §§ 1110, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2013).

2. The criteria for service connection for a skin disease, to include as due to exposure to Agent Orange have not been met. 38 U.S.C.A. §§ 1110, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b) (1). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial decision on the claim for VA benefits. A November 2007 letter, sent prior to the initial unfavorable adjudication of these claims, advised the Veteran of the evidence and information necessary to substantiate these claims as well as his and VA's respective responsibilities in obtaining such evidence and information. The November 2007 letter also advised the Veteran of the information and evidence necessary to establish a disability rating and an effective date in accordance with Dingess/Hartman, supra.

Relevant to the duty to assist, the Veteran's service treatment records (STRs) and pertinent post-service treatment records have been obtained and considered. With respect to the Veteran's June 2013 Board hearing, the Board notes that the Veteran was provided an opportunity to set forth his contentions during the hearing before the undersigned VLJ. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c) (2) requires that the RO Decision Review Officer or VLJ who chairs a hearing to fulfill two duties: (1) to fully explain the issues and (2) to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

Here, during the June 2013 hearing, the undersigned VLJ enumerated the issues on appeal. Also, information was solicited regarding the Veteran's disabilities, why he believed them to be service-related, and evidence pertinent to the appeal. Moreover, any deficiencies in development were addressed in the subsequent Board remand. As such, the Board finds that, consistent with Bryant, the undersigned VLJ complied with the duties set forth in 38 C.F.R. 3.103(c) (2), and that the hearing was legally sufficient.

Additionally, the Board finds there has been substantial compliance with its November 2013 remand directives. Specifically, VA opinions and examinations addressing the etiology of the allergies, claimed as infections, and skin disease were obtained, and the Board finds that such are adequate to decide the claims for service connection. In this regard, the VA medical professional who completed the opinions/examinations considered pertinent evidence of record, and included rationale. 

The Veteran has not identified any additional, outstanding records that have not been requested or obtained. 

Thus, the Board finds that VA has fully satisfied the duty to notify and assist with respect to the issues adjudicated herein, and that additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose with respect to such issue. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). 

Legal Criteria - Service Connection 

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303(a) (2013). In general, service connection requires competent and credible evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

The disabilities claimed on appeal are not "chronic diseases" listed under 38 C.F.R. § 3.309(a) (2013); therefore, the presumptive service connection provisions of 38 C.F.R. § 3.303(b) do not apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2013).

A veteran who during active military, naval, or air service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed during such service to an herbicide agent (like Agent Orange), unless there is affirmative evidence establishing he was not exposed to any such agent during that service. 38 U.S.C.A. § 1116(f). The diseases listed at 38 C.F.R. § 3.309(e) shall have become manifest to a degree of 10 percent or more at any time after service, with an exception not applicable to this case. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.308(a) (6) (ii). These diseases include chloracne or other acneform disease consistent with chloracne, Type II Diabetes Mellitus, Hodgkin's disease, ischemic heart disease, all chronic B-cell leukemias, multiple myeloma, Non-Hodgkin's lymphoma, acute and subacute peripheral neuropathy, Parkinson's disease, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), AL amyloidosis, and soft-tissue sarcoma. 38 C.F.R. § 3.309(e); see Notice, 75 Fed. Reg. 168, 53202-16 (Aug. 31, 2010).

The Secretary of VA, however, has determined there is no positive association between exposure to herbicides and any other condition for which the Secretary has not specifically determined that a presumption of service connection is warranted. See Notice, 59 Fed. Reg. 341 -46 (1994); see also Notice, 61 Fed. Reg. 41, 442-49 (1996). The Secretary has clarified that a presumption of service connection based on exposure to herbicides used in the Republic of Vietnam during the Vietnam Era is not warranted for the following specific conditions: cancer of the oral cavity (including lips and tongue, pharynx (including tonsils), or nasal cavity (including ears and sinuses); cancers of the pleura, mediastinum, and other unspecified sites within the respiratory system and intrathoracic organs; esophageal cancer; stomach cancer; colorectal cancer (including small intestine and anus); hepatobiliary cancers (liver, gallbladder and bile ducts); pancreatic cancer; bone and joint cancer; melanoma; non-melanoma skin cancer (basal cell and squamous cell); nasopharyngeal cancer, breast cancer, cancers of reproductive organs (cervix, uterus, ovary, testes, and penis; excluding prostate); urinary bladder cancer; renal cancer; cancers of brain and nervous system (including eye); endocrine cancers (thyroid, thymus, and other endocrine; cancers at other and unspecified sites; neurobehavioral disorders (cognitive and neuropsychiatric); amyotrophic lateral sclerosis (ALS); chronic peripheral nervous system disorders; respiratory disorders; gastrointestinal immune system disorders (immune suppression, allergy, and autoimmunity); circulatory disorders (including hypertension); endometriosis; effects on thyroid homeostasis; certain reproductive effects, and, any other condition for which the Secretary has not specifically determined a presumption of service connection is warranted. See Notice, 72 Fed. Reg. 32,395 -32,407 (Jun. 12, 2007); Notice, 74 Fed. Reg. 21, 258-21260 (May 7, 2009); Notice, 75 Fed. Reg. 32540 (June 8, 2010).

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the Court of Appeals for Veterans Claims held that an appellant need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail.

The Court has also stated, "It is clear that to deny a claim on its merits, the evidence must preponderate against the claim." Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert.

Analysis

Initially, the Board notes that although it has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that VA must review the entire record, but does not have to discuss each piece of evidence). Hence, the Board will summarize the relevant evidence where appropriate and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claims.

Allergies, Claimed as Infections

The Veteran contends that a large dose of penicillin (PCN) he received in service caused him to have problems since that time to include infection involving the eyes, ears, nose, throat and gums.

As will be explained below, the record establishes that the Veteran did not have residuals of allergic reaction to penicillin, claimed as allergies and infections, during the pendency of the claim. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). 

Service treatment records show that the Veteran experienced an allergic reaction to PCN in September 1967. Subsequent treatment records show that he was treated with alternative antibiotics when necessary.

Service treatment records also show that on his April 1968 separation examination the Veteran reported having a rash due to his allergic reaction to PCN.

The Veteran was afforded a VA examination in February 2013 in which the examiner stated that there were no residual effects for the allergic reaction to PCN in service; the reaction was a rash and the antibiotic was discontinued, the Veteran responded well without any complications or residual from that reaction neither acutely nor remotely.

The Veteran testified before the undersigned VLJ in June 2013 that the heavy dose of PCN forever changed his body to make him prone to disease not treatable by PCN. That is, the large dose of PCN created his allergy to the antibiotic.

Subsequently, the Board found that the February 2013 opinion was inadequate for adjudication purposes and remanded the claim.

In response to the Board's November 2013 remand, an addendum opinion was submitted in April 2014 in which the examiner stated that the Veteran was treated for tonsillitis in service. The examiner stated that the Veteran had a reaction to PCN in the form of a rash, this antibiotic had never been used ever since, and there were no residual effects from this. The examiner opined that there were no residual effects from the allergic reaction to PCN in the service. The examiner stated that the Veteran was treated with alternative agents and responded well, without any complications or residual from that reaction neither acutely nor remotely. The examiner explained that PCN was the most commonly reported medication allergy; a drug allergy (or hypersensitivity) reaction was defined as a specific immunologic reaction to a drug. The examiner stated that no studies had prospectively evaluated the rates at which patients become sensitized (i.e. develop PCN-specific immunoglobulin E (IgE)) during PCN treatment, and statistics about mild immediate reactions are sparse. The examiner opined that the reaction the Veteran had was an immediate reaction, and the dose of PCN used to treat his tonsillitis infection in service could not be cited for causing this immunologic response. The examiner stated that STRs from March 1968 clearly documented that the Veteran received a shot of PCN and had itching for 30 minutes, felt numb for two hours, and then the symptoms resolved. The examiner stated that thereafter tetracycline was used, his infection responded to it, and PCN was listed as an allergy. The examiner stated that there was no inordinately large dose of PCN provided from what could be gleaned from the STRs as the infection being treated was an exudative tonsillitis, and there were no other factors to raise suspicion that the dose of PCN provided would lead to allergic response. The examiner stated that there was no medical evidence in literature review to suggest that a heavy dose of PCN could predispose a patient to disease, infections, or allergies, nor was here any evidence that the Veteran received a "heavy dose of PCN". The examiner noted that a number of risk factors had been identified for the development of immediate reactions to PCN and antibiotics in general such as age, frequency and route of administration, multiple drug allergy syndrome, hereditary factors, and other allergic diseases. The examiner opined that individuals who reacted to PCN in this way would likely continue to have such an allergic response to PCN, but neither the fact that the Veteran received this medication in service nor the dose of the PCN he received had any implication on the fact that the Veteran has an allergic response to penicillins.

In a notice of disagreement received in December 2014, the Veteran stated that when he denied that he was allergic to PCN in service, a medic said that since they were in the field the Veteran would be given a big dose to knock out gonorrhea (the clap) and strep throat. The Veteran stated that he agreed but instantly felt thousands of pins and needles stabbing him, he swelled up like a basketball, and the medic shot him with what he thought was morphine. The Veteran stated that he instantly began throwing up, was medivacked back to the hospital, and had a temperature above 105 degrees. He stated that he was packed in ice for 24 hours, and his temperature rose to 195 degrees. He stated that he stayed in hospital for three to five days before returning to field, continued to have problems, and spent three months in the hospital in January 1968. 

The Board finds that the in-service allergic reaction to PCN did not result in current residuals, claimed as allergies and infections. To this point, the April 2014 VA examiner found that there were no residual effects from the allergic reaction to PCN in the service, the reaction the Veteran had was an immediate reaction, the dose of PCN used to treat his tonsillitis infection in service could not be cited for causing this immunologic response, and there was no medical evidence in literature review to suggest that a heavy dose of PCN could predispose a patient to disease, infections, or allergies.

Moreover, evidence of a sign or symptom, without a diagnosed or identifiable underlying malady or condition, does not, in and of itself, constitute a "disability" for which service connection may be granted. Sanchez-Benitez v. West, 13 Vet. App. 282 (1999). An allergy to a medicine is not a disability for VA compensation purposes. See 61 Fed. Reg. 20440, 20445 (May 7, 1996). 

The Board notes that while the Veteran is competent to report his symptoms, the issue of whether he has residuals of allergic reaction to penicillin, claimed as allergies and infections, is a complex medical matter; that is, not capable of lay observation. See, e.g., Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (providing that while the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). And it is not argued or shown that the Veteran is qualified through specialized education, training, or experience to make such a diagnosis. Id. See also Routen v. Brown, 10 Vet. App. 183, 186 (1997) (A layperson . . . is generally not capable of opining on matters requiring medical knowledge). Thus, to the extent that the Veteran's statements are offered as proof of a diagnosed disability, his statements are not to be considered as competent evidence favorable to claim. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) ("[w]hether lay evidence is competent and sufficient in a particular case is a fact issue to be addressed by the Board"). 

Congress has specifically limited entitlement to service connection to cases where there is a current disability. Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998). In the absence of proof of present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

Accordingly, since a condition precedent for establishing service connection is the Veteran being diagnosed with the disability during the pendency of the appeal and the Veteran does not have such diagnoses, the Board finds that entitlement to service connection must be denied. See 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303; Rabideau v. Derwinski, 2 Vet. App. 141, 143 (1992) (establishing service connection requires finding a relationship between a current disability and events in service or an injury or disease incurred therein). 

In light of the above, the Board finds that service connection is not warranted. The most competent and probative evidence is against a finding that the Veteran has residuals of allergic reaction to penicillin, claimed as allergies and infections. The Board has considered the applicability of the benefit of the doubt doctrine; however, that doctrine is not applicable. 38 U.S.C.A. § 5107(b) (West 2014); See also, e.g., Gilbert, 1 Vet. App. 49.

Skin Disease

The Veteran asserts and testified before the undersigned that his service in Vietnam, and potential exposure to Agent Orange, caused "crotch rot fungus" or black mold on fingers, feet, buttocks and crotch. 

At the outset, the Board notes that exposure to Agent Orange has been conceded.

VA treatment records show diagnoses of tinea unguium /onychomycosis of the fingernails and toenails, condyloma, tinea cruris (jock itch or crotch rot), and eczema.

In response to the Board's November 2013 remand, a VA opinion was received in April 2014 that stated that based on all information regarding effects of Agent Orange on skin from the Institute of Medicine (IOM), exposure to Agent Orange does not have any effect on the etiology or severity of the following skin conditions: tinea unguium /onychomycosis of the fingernails and toenails, condyloma, tinea cruris and eczema. The examiner stated that, in other words, tinea unguium/onychomycosis of the fingernails and toenails, condyloma, tinea cruris and eczema are not due to nor caused by Agent Orange exposure in service.

The Veteran was also afforded a VA examination in April 2014 in which the VA examiner opined that the condition claimed was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event or illness. In pertinent part, the examiner stated that a review of the Veteran's STRs did not show any skin conditions present during his military service or on his separation physical. The examiner stated that tinea unguium, onychomycosis of the fingernails and toenails, and tinea cruris were dermatophyte infections, a type of fungus that caused infections of the skin and nails. The examiner stated that this was a common condition worldwide.

An addendum VA opinion was also received in July 2014 in which the examiner stated that the Veteran's separation examination did not show any type of rash, dermatitis, or skin condition. The examiner stated that the IOM found sufficient evidence of an association for chloracne; limited or suggestive evidence of an association for porphyria cutanea tarda; inadequate or insufficient evidence of an association for nonmelanoma skin cancer (basal cell and squamous cell); the IOM did not find evidence of association with any other skin conditions, and the Veteran had not been diagnosed with these skin disorders. The examiner stated that no medical evidence was present to suggest an association between the Veteran's current skin condition and his military service. 

First, the Board will address whether service connection on a presumptive basis is warranted. The record shows that the Veteran served in Vietnam during the prescribed time period. However, the Veteran's skin disorders are not among the diseases listed as presumptively service connected. Therefore, service connection on a presumptive basis is not warranted. However, the regulations governing presumptive service connection for Agent Orange do not preclude a veteran from establishing service connection with proof of actual direct causation. Combee v. Brown, 34 F.3d 1039 (1994). Therefore, entitlement to service connection is considered on this basis as well.

With regard to entitlement to service connection under the provisions of 38 C.F.R. § 3.303(a), there are three negative medical opinions of record that address etiology of the skin disabilities. In so providing these opinions, the VA examiners reviewed the evidence of record and considered the Veteran's contentions. There are no medical opinions of record to the contrary. For all of these reasons, the Board finds the VA opinions to be probative as to the issue of nexus. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (factors for assessing the probative value of a medical opinion include the thoroughness and detail of the opinion). 

The Board notes that while the Veteran is competent to report his symptoms, the issue of whether he has skin disabilities related to active service, to include Agent Orange exposure, is a complex medical matter; that is, not capable of lay observation. See, e.g., Woehlaert, 21 Vet. App. 456 (providing that while the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). And it is not argued or shown that the Veteran is qualified through specialized education, training, or experience to make such a diagnosis. Id. See also Routen, 10 Vet. App. 183, 186 (A layperson . . . is generally not capable of opining on matters requiring medical knowledge). Thus, to the extent that the Veteran's statements are offered as proof of nexus, his statements are not to be considered as competent evidence favorable to claim. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) ("[w]hether lay evidence is competent and sufficient in a particular case is a fact issue to be addressed by the Board"). 

In light of the above, the Board finds that service connection is not warranted. The most competent and probative evidence is against a finding that the Veteran has a current skin disability that had its onset or is otherwise related to active service, to include Agent Orange exposure. The Board has considered the applicability of the benefit of the doubt doctrine; however, that doctrine is not applicable. 38 U.S.C.A. § 5107(b) (West 2014); See also, e.g., Gilbert, 1 Vet. App. 49.


ORDER

Entitlement to service connection for allergies, claimed as infections, is denied.
 
Entitlement to service connection for a skin disease, to include as due to exposure to Agent Orange, is denied.


REMAND

The Board is of the opinion that additional development is required before the Veteran's claims of entitlement to service connection for an acquired psychiatric disorder and entitlement to an earlier effective date and increased rating for PTSD are decided. 

Acquired Psychiatric Disorder

It should be noted that a claim for a single psychiatric disorder should include all psychiatric disorders that are raised by the record. Clemons v. Shinseki, 23 Vet. App. 1 (2009). In view of Clemons, the grant of service connection for PTSD is not effectively a grant of all psychiatric disorders as the evidence raises the possibility that separate ratings may be warranted. See Amberman v. Shinseki, 570 F.3d 1377, 1381 (Fed. Cir. 2009).

The Veteran contends that his acquired psychiatric disorders are related to an in-service incident in which there were enemy trip flares on base, and the Veteran fired a grenade launcher, killing three Viet Cong.

The Board notes again that this in-service stressor was conceded.

In the November 2013 remand, the Board noted that the Veteran was diagnosed with adjustment disorder in September 2008. The Board instructed that the Veteran be afforded a VA examination by a psychiatrist or a psychologist to determine the nature and etiology of all acquired psychiatric disorders present during the pendency of this claim, to specifically include the adjustment disorder.

In response to the Board's remand, the Veteran was afforded a VA examination in May 2014. However, the examiner did not address the nature and etiology of the diagnosed adjustment disorder.

A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). Failure of the Board to ensure compliance with remand instructions constitutes error and warrants the vacating of a subsequent Board decision. Id. Therefore, pursuant to Stegall, the issue must again be remanded for compliance with the November 2013 Board remand.

PTSD

As noted above, in a rating decision in October 2014, the RO granted service connection for PTSD with an evaluation of 50 percent from the date of service connection, October 18, 2007. In a statement in December 2014, associated with VBMS, the Veteran disagreed with the effective date and the assigned rating. 

A statement of the case has not been issued as it relates to this issue. The Board is required to remand the case for issuance of a statement of the case. Manlicon, 12 Vet. App. 238.

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be afforded a VA examination by a psychiatrist or a psychologist to determine the nature and etiology of his adjustment disorder diagnosed in September 2008. The physical and electronic claims files must be made available to and reviewed by the examiner, and any indicated studies should be performed.

With respect to the adjustment disorder, the examiner should provide opinions as to: (a) is it at least as likely as not (a 50 percent probability or greater) etiologically related to the Veteran's active service, to specifically include the aforementioned in-service stressors, (2) is it at least as likely as not (a 50 percent probability or greater) caused by OR aggravated by the Veteran's service-connected PTSD? The examiner should comment on whether adjustment disorder is a symptom of the Veteran's PTSD or a separate and distinct psychiatric disorder.

The term "aggravated" in the above context refers to a permanent worsening of the underlying condition, as contrasted to temporary or intermittent flare-ups of symptomatology which resolve with return to the baseline level of disability. 

For the purposes of the opinion, the Veteran should be presumed to be a reliable historian.

The examiner should set forth a complete rationale for all opinions expressed and conclusions reached.
 
2. The Veteran must be given adequate notice of the date and place of any requested examination. A copy of all notifications, including the address where the notice was sent must be associated with the claims files. The Veteran is to be advised that failure to report for a scheduled VA examination without good cause shown may have adverse effects on his claim. 

3. Issue a statement of the case on the issue of entitlement to an effective date earlier than October 18, 2007, for the grant of service connection and a rating in excess of 50 percent for PTSD. (The issue should be returned to the Board only if a timely substantive appeal is received.)

4. After completion of the above and any additional development deemed necessary, the issues on appeal should be reviewed with consideration of all applicable laws and regulations. If any benefit sought remains denied, the Veteran and his representative should be furnished an appropriate supplemental statement of the case and be afforded the opportunity to respond. Thereafter, the case should be returned to the Board for appellate review.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs