Citation Nr: 1522711 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 12-00 552 ) DATE 
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to an increased rating for residual injury of right ankle, postoperative, currently rated as 10 percent disabling.

2. Entitlement to service connection for arthritis of the right ankle, to include as secondary to service-connected residual injury of right ankle, postoperative.

3. Entitlement to service connection for degenerative disc disease of the lumbar spine, to include as secondary to service-connected residual injury of right ankle, postoperative.


REPRESENTATION

Veteran represented by: Clifford M. Farrell, Attorney at Law




ATTORNEY FOR THE BOARD

M. Nye, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1981 to August 1985.

This case comes to the Board of Veterans' Appeals (Board) from a January 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio, which assigned a 10 percent rating for service-connected residuals of a right ankle injury and denied the Veteran's separate claim for service connection for arthritis of the right ankle. In its January 2011 decision, the RO recognized that, in March 2003, it had issued a decision purportedly denying the Veteran's claim for service connection for instability of the right ankle injury and the March 2003 decision did not reflect the previously service-connected residual injury of right ankle, postoperative. It is clear from the January 2011 rating decision and the subsequent statement of the case that instability of the right ankle is considered by VA as one of the service-connected residuals of a right ankle injury. 

In his substantive appeal (VA Form 9) the Veteran requested the opportunity to testify at a Travel Board hearing before a Veterans Law Judge. However, the Veteran withdrew his request for a hearing in October 2013. He provided new evidence in October 2013, which was not available to the RO when it issued the most recent supplemental statement of the case. This evidence was accompanied by a letter waiving the Veteran's right to have this evidence considered by the RO in the first instance. See 38 C.F.R. § 20.1304 (2014).

The issues of entitlement to service connection for arthritis of the right ankle and entitlement to service connection for degenerative disc disease of the lumbar spine are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).
FINDINGS OF FACT

1. Prior to September 10, 2013, the service-connected right ankle disability was primarily manifested by pain, stiffness, instability and no more than moderate limitation of motion.

2. Since September 10, 2013, the service-connected right ankle disability has been primarily manifested by pain, stiffness, instability and marked limitation of motion.


CONCLUSIONS OF LAW

1. Prior to September 10, 2013, the criteria for a disability rating higher than 10 percent for residual injury of right ankle, postoperative, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.71a, Diagnostic Codes 5270, 5271 (2014).

2. From September 10, 2013, the criteria for a disability rating of 20 percent, but no higher, for residual injury of right ankle, postoperative, have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.71a, Diagnostic Codes 5270, 5271.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans' Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5103, 5103A, 38 C.F.R. § 3.159. In a June 2010 letter, VA notified the Veteran of the information and evidence needed to substantiate and complete his claims. The letter gave the Veteran notice of what part of that evidence is to be provided by the claimant, what part VA will attempt to obtain, and how disability ratings and effective dates are determined. 

VA likewise fulfilled its duty to assist the Veteran in obtaining evidence needed to substantiate his claims. The AOJ obtained the Veteran's service treatment records and post-service records of his treatment at a VA medical center. The AOJ also arranged for the Veteran's ankle to be examined by a certified nurse practitioner in December 2010. 

Analysis

Before addressing the Veteran's claims separately, a brief clarification may be useful to explain what the claim for an increased rating for residual injury of right ankle, postoperative, has in common with his arthritis claim and to further explain why this decision nonetheless treats them as separate claims, deciding one and remanding the other. In the Army, the Veteran was diagnosed with a sprained right ankle on several occasions. In January of 1983, he underwent surgical reconstruction of the lateral ligaments in his right ankle. His diagnosis at discharge from the Army hospital was lateral instability of the right ankle. In November 1985, the Veteran was granted service connection for residuals of his right ankle injury. In support of his more recent claim for arthritis of the right ankle, the Veteran attributes his claimed arthritis to his in-service ankle injury. Thus, there is a sense in which the Veteran's new service-connection claim is merely another aspect of the claim for which service connection has already been granted. In other words, the Veteran continues to seek compensation for service-connected residuals of his right ankle injury and, in this case, the specific residuals for which he seeks compensation include arthritis. 

38 C.F.R. § 4.14 (2014) prohibits "pyramiding" - or the assignment of multiple disability ratings for more than one service-connected disability when the symptoms of each service-connected disability duplicate or overlap with the symptoms of another service-connected disability. See Amberman v. Shinseki, 570 F.3d 1377, 1381 (Fed. Cir. 2009). "38 C.F.R. § 4.14, deals with the appropriate rating to be assigned to a veteran whose service-connected disabilities are subject to multiple classifications." Id. at 1380 (emphasis added). An individual claimant can, nevertheless, be granted service connection for more than one service-connected disability, even if both disabilities produce similar symptoms, e.g., bipolar disorder and posttraumatic stress disorder. See Id. at 1381. Because pyramiding is a rating consideration, not a service connection consideration, it would be wrong to deny entitlement to service connection merely because it is possible that, after service-connection is granted, a separate and additional rating might not be assigned to the Veteran's right ankle arthritis after applying 38 C.F.R. § 4.14. For this reason, in spite of the common aspects of the issues on appeal, the Board must address them separately. Since the Board is remanding the Veteran's arthritis claim for further development, the result of today's decision is to leave the Veteran, as of the date of this decision, with only one compensable disability rating, which means that this decision does not require a pyramiding analysis.

Disability evaluations are determined by applying the criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. An evaluation of the level of disability present must also include consideration of the functional impairment of the Veteran's ability to engage in ordinary activities, including employment. 38 C.F.R. § 4.10. 

When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

To evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. See Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where, as here, entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Staged ratings are appropriate for any rating claim when the service-connected disability exhibits symptoms that warrant different ratings at different times during the appeal period. See Hart v. Mansfield, 21 Vet. App. 505, 509 (2007). A staged rating is appropriate in this case because the evidence supports only a 10 percent schedular rating prior to September 10, 2013 - the date of an examination of the Veteran by a private physician - and a 20 percent schedular rating since September 10, 2013.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. 38 C.F.R. § 4.40. These regulations apply regardless of whether the painful motion is related to arthritis and may warrant a rating of 10 percent even in the absence of limitation of motion. See Burton v. Shinseki, 25 Vet. App. 1, 5 (2011).

When assessing the severity of a musculoskeletal disability that, as here, is at least partly rated on the basis of limitation of motion, VA must also consider the extent that the veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when his symptoms are most prevalent ('flare-ups') due to the extent of his pain (and painful motion), weakness, premature or excess fatigability, and incoordination, assuming these factors are not already contemplated by the governing rating criteria. See DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995); see also 38 C.F.R. §§ 4.40, 4.45, 4.59.

The RO assigned a 10 percent rating for residuals of the Veteran's right ankle injury under 38 C.F.R. § 4.71a, Diagnostic Code 5271. Under this diagnostic code, a moderate limitation of ankle motion warrants a 10 percent rating and a marked limitation warrants a 20 percent rating. The normal range of motion of the ankle is 20 degrees of dorsiflexion and 45 degrees of plantar flexion. See 38 C.F.R. § 4.71, Plate II. 

To assess the condition of the Veteran's ankle, the RO arranged an examination by a certified nurse practitioner in December 2010. After reviewing the claims file and examining the ankle, the examiner wrote a report, which noted pain, stiffness and instability. According to the examiner, the Veteran required ankle sleeve assistive devices for support and stability. The examiner conducted range of motion exercises and found that right ankle dorsiflexion was 0 to 20 degrees (normal) and plantar flexion was 0 to 30 degrees (15 degrees less than normal). According to the examiner's report, the Veteran did not experience pain while performing the range of motion tests. But he did experience flare-ups, consisting of an increase in pain with activity or during cold or moist weather. 

The Veteran's post-service VA treatment records also described ankle pain and limited motion on several occasions. A September 2010 history and physical report noted "very little" range of motion in the right ankle, although the physician did not express these limits in terms of degrees of dorsiflexion and plantar flexion. VA medical staff noted right ankle pain in October, November and December of 2010, in March, July and November of 2011, and in April and June of 2012. 

In September 2013, the Veteran was examined again, this time by a physician in private practice. This physician then wrote a report and an October 2013 addendum, which the Veteran's attorney provided to VA. The report includes the results of range of motion exercises. These are slightly confusing in that the private physician does not provide a measurement for plantar flexion specifically, but in context it is clear that the physician's reference to how far the claimant can "extend" his ankle refers to plantar flexion: "Range of motion of the right ankle notes that he can extend it, at best, to 10 degrees; dorsiflexion is 15 degrees; lateral bending and medial bending is 0 degrees on each side." In other words, dorsiflexion was 5 degrees less than normal and plantar flexion was 35 degrees less than normal. A copy of the rating criteria is attached to the physician's report and he writes that "From Code 5270 [sic], these findings would place him in the 'marked' limited ankle range of motion for a 20% rating. . . . Since his surgery [in January 1983] he has developed osteoarthritis and/or DJD resulting in swelling, stiffness and pain in the right ankle and due to occasional episodes of incapacitating exacerbations, [the Veteran] now uses an ankle sleeve for both support and stability." The conclusion made by the private physician that the Veteran's limited range of motion warrants a 20 percent rating under the rating criteria is not binding on the Board as that is a legal determination.

The range of motion measurements recorded by the December 2010 examiner are fairly described as moderate. The September 2013 measurements demonstrate more limited motion, particularly with regard to plantar flexion. The Board has also considered the presence of painful flare-ups, which were acknowledged by the December 2010 examiner and more thoroughly described in the private physician's report. The September 2013 report described the Veteran's ankle pain as "constant" and worse in the morning. In the examiner's opinion, this pain also caused abnormal gait when walking. In light of VA's obligation to adopt a liberal interpretation of the terms "moderate" and "marked" pursuant to 38 C.F.R. § 3.102 (2014), the Board finds that the evidence is at least evenly balanced as to whether the Veteran's symptoms have most closely approximate "marked" limited motion of the right ankle since September 10, 2013. Thus, with respect to the period beginning September 10, 2013, the Board will grant an increased 20 percent disability rating under Diagnostic Code 5271. 

Prior to the September 10, 2013 examination, the preponderance of the evidence demonstrates that the Veteran's symptoms most closely approximated moderate limitation of ankle motion. According to a March 2011 orthopedic surgery note, which acknowledged complaints of chronic ankle pain and flare-ups during cold weather, the Veteran had "normal contour and motion of the ankle." A January 2012 podiatry note indicates "adequate dorsiflexion and plantarflexion range of motion ankle joint" as well as no crepitus and "no pain at end range of motion." In March 2012, a VA podiatrist made an essentially identical observation. In short, before his September 10, 2013 private medical examination, there is no evidence in the record reflecting marked limitation of motion in the Veteran's right ankle. Since the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine does not apply, see 38 U.S.C.A. § 5107(b), and the claim for an increased rating must be denied with respect to the period prior to September 10, 2013. 

Beginning September 10, 2013, a higher 20 percent rating is warranted. This is the highest schedular rating allowed for limitation of motion of the ankle absent ankylosis. The Board notes that while the Veteran was seen by the private physician in May 2013, it is unclear if a physical examination including range of motion testing was performed at that time. Ultimately, the first documentation of a worsening in disability is the findings from the September 2013 examination. As such, the Board finds that is the appropriate date for the grant of a higher rating. 

There is no evidence of ankylosis or os calcis, astragalus, or astragalectomy, warranting a higher rating under Diagnostic Codes 5270, 5272, 5273, or 5274. For this reason, a schedular rating higher than 20 percent for residuals of the Veteran's right ankle injury is not warranted.

As to consideration of referral for an extraschedular rating, such consideration involves a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating criteria adequately contemplate the Veteran's disability picture. See Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular rating is adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology, then the second inquiry is whether the claimant's exceptional disability exhibits other related factors such as those provided by the regulations as governing norms. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of Compensation Service to determine whether an extraschedular rating is warranted. 

In this case, the Veteran's symptoms include instability which is not contemplated in Diagnostic Code 5271. However, there is no lay or medical evidence reflecting frequent hospitalizations for the right ankle during the appeal period or that the Veteran has had marked interference with employment due to his right ankle disability. While the Veteran reported being unemployed at his October 2010 examination he did not attribute this status to his right ankle and there is no allegation or affirmative evidence that the right ankle disability has markedly interfered with employment. Moreover, there is no evidence suggesting that, even when combined with the effects of the Veteran's service-connected foot disability (currently rated as noncompensable), the Veteran's ankle disability has caused marked interference with employment, frequent hospitalization, or that the symptoms in his right lower extremity have otherwise rendered impractical the application of the regular schedular standards. Under these circumstances, referral for extraschedular rating is not appropriate.

ORDER

For the period prior to September 10, 2013, entitlement to a disability rating higher than 10 percent for residual injury of right ankle, postoperative, is denied.

Beginning September 10, 2013, entitlement to a disability rating of 20 percent, but no higher, for residual injury of right ankle, postoperative, is granted.


REMAND

The Veteran's documented ankle injury and January 1983 ankle surgery clearly satisfy the in-service disease or injury requirement of his service connection claim for arthritis of the right ankle. See Fagan v. Shinseki, 573 F.3d 1282, 1287 (Fed. Cir. 2009). There is conflicting evidence with respect to the claim's remaining elements.

A February 1984 consultation report reflects a provisional diagnosis of traumatic arthritis (osteo). However, relying on an October 2010 x-ray of the Veteran's right ankle, the December 2010 VA examiner found "no evidence of arthritis on x-ray findings." According to the Veteran's post-service VA treatment records, "Patient reports he has been diagnosed with arthritis. . ." The record also refers to "arthritic pain in his right ankle." But there is no clear diagnosis of arthritis in the VA treatment records. Instead, the ankle diagnoses are "ankle pain" or "chronic ankle sprain" or "right ankle pain syndrome." There is also a diagnosis of ankle instability. 

The September 2013 report of the Veteran's private physician does, however include a diagnosis of right ankle arthritis: "Since his surgery he has developed osteoarthritis and/or DJD resulting in swelling, stiffness and pain in the right ankle and due to occasional episodes of incapacitating exacerbations, [the Veteran] now uses an ankle sleeve for both support and stability." Acknowledging that his September 2013 report did not include a medical opinion on whether a causal connection exists between the Veteran's current disability and military service, the private physician wrote an addendum opinion in October 2013. According to the addendum opinion, the osteoarthritis and/or degenerative joint disease which has developed in the right ankle is at least as likely as not connected to the original injury and surgery to the right ankle which occurred while the Veteran was in the service, and is a flow through injury for the originally recognized right ankle injury and surgery. The physician explained that a joint that has undergone surgery and that is used as much as the right ankle is used normally develops osteoarthritis and/or degenerative joint disease as a result of the trauma of the original injury, surgery and continued use of the joint.

The October 2013 addendum includes a clear explanation of how someone with the Veteran's history of ankle injuries might later develop arthritis. But neither the addendum nor the original report offers an explanation for the physician's current diagnosis of ankle arthritis which takes into account the October 2010 ankle x-ray which, according to the December 2010 VA examiner, demonstrated no evidence of arthritis. After reviewing the record, the Board is unaware of any x-ray or other imaging study since October 2010 which demonstrates the presence of arthritis in the Veteran's right ankle. Nevertheless, the diagnosis of ankle arthritis, almost three years after the October 2010 x-ray, may indicate either that the Veteran developed arthritis in his ankle since the x-ray was taken, or that the private physician had reasons for doubting the conclusion of the December 2010 VA examiner which were not explained in his report. This case must be remanded for a new examination to determine whether or not the Veteran has arthritis in his ankle.

The AOJ denied the claim for service connection for degenerative disc disease of the lumbar spine in September 2012. The Veteran filed a notice of disagreement, but the AOJ has not yet issued a statement of the case. Where, as here, a veteran files a timely notice of disagreement, and VA has not issued a statement of the case, the Board must remand the claim for issuance of a statement of the case. See Manlincon v. West, 12 Vet. App. 238, 240-41 (1999).

Accordingly, the case is REMANDED for the following action:

1. Request that the Veteran identify and authorize VA to obtain any medical records detailing treatment for his right ankle. With the Veteran's assistance, any outstanding, relevant private and VA records identified by the Veteran should be obtained.

2. Schedule the Veteran for a VA examination to assess the nature and etiology of his right ankle arthritis, if any. The claims file should be provided to and reviewed by the examiner. Any indicated testing should be performed, including a new x-ray or other appropriate imaging study to determine whether the Veteran has arthritis of the right ankle. 

After reviewing the claims file, examining the Veteran, and conducting any necessary tests, the examiner should indicate whether the Veteran has arthritis of the right ankle. If the Veteran does have arthritis of the right ankle, the examiner should also indicate whether it is at least as likely as not (50 percent or more probability) that the Veteran's arthritis (1) is the result of the Veteran's service-connected right ankle injury, (2) is otherwise related to any other disease, injury or event in service, (3) is caused by his service-connected residual injury of right ankle, postoperative, and (4) is aggravated (permanently worsened beyond the natural course of progression) by the service-connected residual injury of right ankle, postoperative. 

In his or her report, the examiner should specifically consider and discuss the December 2010 VA examination report and October 2010 x-ray and also the September 2013 report and October 2013 addendum opinion of the Veteran's private physician. A comprehensive medical rationale is requested with respect to all opinions and findings.

3. After the above development has been completed, readjudicate the claim for service connection for arthritis of the right ankle, to include as secondary to the Veteran's service-connected residual injury of right ankle, postoperative. If the benefit sought on appeal remains denied, furnish the Veteran and his representative with a supplemental statement of the case and return the case to the Board.

4. Furnish the Veteran and his representative a statement of the case on the claim for entitlement to service connection for degenerative disc disease of the lumbar spine. The AOJ should also furnish to the Veteran and his representative a VA Form 9 and afford them the appropriate opportunity to submit documentation perfecting an appeal. This issue should not be returned to the Board unless the Veteran perfects his appeal.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).



 (CONTINUED ON NEXT PAGE)
These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
Nathan Kroes
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs