Citation Nr: 1607916 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 10-38 347 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for prostate cancer, claimed as due to exposure to herbicides or pesticides or as secondary to service-connected diabetes mellitus.

2. Entitlement to service connection for erectile dysfunction, claimed as secondary to service-connected diabetes mellitus or service-connected mood disorder, to include medications prescribed for treatment.

3. Entitlement to an initial rating in excess of 10 percent for a psychiatric disability prior to May 6, 2014, and in excess of 30 percent as of May 6, 2014.

4. Entitlement to a total disability rating for compensation based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States

ATTORNEY FOR THE BOARD

L. A. Rein, Counsel


INTRODUCTION

The Veteran had active service from July 1948 to July 1949, September 1950 to May 1962, and May 1965 to August 1974.

These matters come to the Board of Veterans' Appeals (Board) on appeal from an August 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Cleveland, Ohio that granted service connection and assigned an initial 10 percent rating for a mood disorder and denied service connection for erectile dysfunction; and from a September 2008 rating decision of the RO in St. Petersburg, Florida that denied service connection for prostate cancer. Jurisdiction of these matters is with the RO in St. Petersburg, Florida.

While the Veteran requested a hearing before the Board in his September 2010 substantive appeals, in August 2011 correspondence, the Veteran withdrew the request for a hearing before the Board and requested that his case be forwarded to the Board without further delay. 

In March 2012, the Board remanded these matters for additional development. 

A July 2014 rating decision granted a higher 30 percent rating for service-connected mood disorder, effective May 6, 2014. The Board notes that because the assigned ratings of the Veteran's service-connected psychiatric disability do not represent the maximum ratings available, the claim remains on appeal. AB v. Brown, 6 Vet. App. 35 (1993).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to service connection for prostate cancer and erectile dysfunction, and the claim for TDIU are REMANDED to the Agency of Original Jurisdiction.


FINDINGS OF FACT

1. Prior to July 6, 2009, the Veteran's psychiatric symptoms are of no more than occupational and social impairment due to mild and transient symptoms that decrease work efficiency and ability to perform occupational tasks only during significant stress, and his symptoms were controlled by medication. Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks is not demonstrated.

2. As of July 6, 2009, the Veteran' psychiatric symptoms are of no more than occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. Occupational and social impairment with reduced reliability and productivity is not demonstrated.


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 10 percent prior to July 6, 2009, 2009, for a psychiatric disability have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.130, Diagnostic Code 9435 (2015).

2. Resolving all reasonable doubt in favor of the Veteran, the criteria for a 30 percent rating, but not higher, for a psychiatric disability, as of July 6, 2009, but not earlier, have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.130, Diagnostic Code 9435 (2015).




REASONS AND BASES FOR FINDINGS AND CONCLUSION

Upon receipt of a substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 3.159 (2015); Pelegrini v. Principi, 18 Vet. App. 112 (2004). If VA does not provide adequate notice of any of element necessary to substantiate the claim, or there is any deficiency in the timing of the notice, the burden is on the claimant to show that prejudice resulted from a notice error, rather than on VA to rebut presumed prejudice. Shinseki v. Sanders, 129 S.Ct. 1696 (2009). 

The Board finds that any defect with regard to the timing or content of the notice to the appellant is harmless because of the thorough and informative notices provided throughout the adjudication and because the appellant had a meaningful opportunity to participate effectively in the processing of the claim with an adjudication of the claim by the RO subsequent to receipt of the required notice. The record does not show prejudice to the appellant, and the Board finds that any defect in the timing or content of the notices has not affected the fairness of the adjudication. Mayfield v. Nicholson, 19 Vet. App. 103 (2005); Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

With regard to the rating decision on appeal that granted service connection and assigned a disability rating and effective date for the award, statutory notice had served its purpose, and its application was no longer required. Dingess v. Nicholson, 19 Vet. App. 473 (2006). A July 2010 statement of the case provided notice on the downstream element of initial rating and readjudicated the matter after further development was completed . 38 U.S.C.A. § 7105 (West 2014); Mayfield v. Nicholson, 20 Vet. App. 537 (2006).

The Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice provided. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (burden of showing that error is harmful or prejudicial falls on party attacking agency decision); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). The Board considers it significant that the subsequent statements made by the Veteran and representative suggest actual knowledge of the elements necessary to substantiate the claim. Dalton v. Nicholson, 21 Vet. App. 23 (2007) (actual knowledge is established by statements or actions by claimant or representative that demonstrate an awareness of what is necessary to substantiate a claim). 

Thus, VA has satisfied the duty to notify the appellant and had satisfied that duty prior to the adjudication in the most recent July 2014 supplemental statement of the case. Overton v. Nicholson, 20 Vet. App. 427 (2006) (Veteran afforded a meaningful opportunity to participate effectively in adjudication of claim, and therefore notice error was harmless). 

The Board also finds that the duty to assist requirements have been fulfilled. All relevant, identified, and available evidence has been obtained, and VA has notified the appellant of any evidence that could not be obtained. The appellant has not referred to any additional, unobtained, relevant, available evidence. VA has obtained several examinations with respect to the claims on appeal. Thus, the Board finds that VA has satisfied the duty to assist provisions of law. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist in development. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

Disability ratings are determined by application of the criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2015). When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating applies. 38 C.F.R. § 4.7 (2015). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2015). 

The Veteran's entire history is to be considered when making disability evaluations. 38 C.F.R. § 4.1 (2015); Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where the question for consideration is the propriety of the initial rating assigned, evaluation of the medical evidence since the effective date of the grant of service connection and consideration of the appropriateness of the assignment of different ratings for distinct periods of time, based on the facts found, is required. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

When rating a mental disorder, VA must consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the claimant's capacity for adjustment during periods of remission. VA will assign a rating based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a) (2015). When rating the level of disability from a mental disorder, VA will consider the extent of social impairment, but shall not assign an rating solely on the basis of social impairment. 38 C.F.R. § 4.126(b) (2015).

Psychiatric examinations frequently include assignment of a Global Assessment of Functioning (GAF) score. According to the Fourth Edition of the American Psychiatric Association 's Diagnostic and Statistical Manual of Mental Disorders (DSM- IV), a GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." There is no question that the GAF score and interpretations of the score are important considerations in rating a psychiatric disability. Richard v. Brown, 9 Vet. App. 266 (1996); Carpenter v. Brown , 8 Vet. App. 240 (1995). However, the GAF score assigned in a case, like an examiner's assessment of the severity of a condition, is not dispositive of the evaluation issue; rather, the GAF score must be considered in light of the actual symptoms of the Veteran's disorder, which provide the primary basis for the rating assigned. 38 C.F.R. § 4.126(a) (2015).

The Veteran's psychiatric disability has been assigned a 10 percent rating prior to May 6, 2014, and a 30 percent rating as of May 6, 2014, pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9435, General Rating Formula for Mental Disorders (2015). 

Pursuant to the General Rating Formula, a 10 percent rating is warranted for occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication.

A 30 percent rating is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactory, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events).

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once per week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near- continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or work like setting); inability to establish and maintain effective relationships.

A 100 percent rating is warranted for total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130 , Diagnostic Code 9411, General Rating Formula for Mental Disorders (2015).

As noted in the Board's March 2012 remand, there is no prohibition against a Veteran being service-connected for more than one psychiatric disability. The same manifestations cannot be rated under different diagnoses. 38 C.F.R. § 4.14 (2015). However, the Veteran's initial service connection claim encompassed all of his currently diagnosed psychiatric disabilities. Clemons v. Shinseki, 23 Vet. App. 1 (2009) (when a claimant makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled). In light of the fact that the Veteran was granted service connection for a mood disorder, and both a mood disorder and PTSD are rated according to the General Rating Formula for Mental Disorders (38 C.F.R. § 4.130, Diagnostic Codes 9201-9440), the Board finds that a single disability rating that encompasses all the overlapping symptoms of the mood disorder and any other psychiatric disabilities is warranted as the symptomatology cannot be distinguished. Diagnostic and Statistical Manual of Mental Disorders, (4th ed. 1994); 38 C.F.R. §§ 4.125, 4.130 (2015); Amberman v. Shinseki, 570 F.3d 1377 (Fed. Cir. 2009).

Prior to August 13, 2009

The evidence prior to August 13, 2009, consists of a June 2008 VA mental disorders examination report showing that the Veteran described his marital and family relationships as pretty good, but that he and his wife had some difficulties. He had some walking partners. He liked to go to sporting events. There was no history of suicide attempts. The Veteran did not report any significant impairment in current psychosocial functioning. He had sporadic mental health treatment since 1968 for anxiety. The Veteran was prescribed medication that the Veteran described as "... quieted me down from what I was feeling; I was feeling very nervous." He reported difficulty with concentrating and anxiety, both controlled with medication. The examiner found the Veteran to be neatly groomed, with spontaneous speech, constricted affect, dysphoric mood, oriented, thought process and content were unremarkable, and with no delusions. He understood the outcome of his behavior and had insight that he had a problem. The Veteran reported former problems sleeping that were now controlled with medication. He did not have panic attacks or homicidal or suicidal thoughts. He had good impulse control. Memory was normal. The diagnosis was mood disorder due to general medical condition and a GAF score of 81 was assigned. The examiner concluded that the Veteran's symptoms were not severe enough to interfere with occupational and social functioning. 

The Board has considered the evidence of record in light of the criteria noted above, and finds that the Veteran's service-connected psychiatric disability prior to August 13, 2009, is appropriately compensated at 10 percent.

The Veteran's psychiatric symptoms were manifested primarily by some symptoms of anxiety, concentration, and sleep impairment, which were controlled by prescribed medication. Those symptoms were productive of no more than occupational and social impairment due to mild or transient symptoms which decreased work efficiency and ability to perform occupational tasks only during periods of significant stress and the symptoms were shown to be controlled by continuous medication. 

The Board finds that the Veteran's symptoms fall squarely within the schedular criteria for 10 percent, and no more. 

During the time period in question, only a GAF score of 81 was assigned. Under the DSM-IV, GAF scores between 81 and 90 indicate that symptoms to be absent or minimal (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members. 

For this period, the probative evidence does not show occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to such symptoms as depressed mood, anxiety, suspiciousness, panic attacks, and/or mild memory loss so as to warrant a 30 percent rating. Therefore, the Board finds that no higher rating was warranted prior to July 6, 2009.

As of July 6, 2009

In the July 6, 2009, notice of disagreement, the Veteran asserted that his symptoms were more severe than compensated in the 10 percent disability rating assigned. Specifically, he stated that he had panic attacks, depressed mood, anxiety, and mild memory loss.

In an undated statement, the Veteran asserted that his PTSD and depression should be rated separately. He asserted that PTSD and depression had a very negative impact on his life, social interactions, and future outlook on life for years. He stated that he had relationships "of sorts" with his children and on some days with his wife. They had been estranged, in the same house, and their social and personal life had been damaged. 

August 13, 2009, and August 24, 2009, private psychological assessments show that the Veteran was self-referred for evaluation due to symptoms of depression and phobias. Though he is receiving medication management, he continued to have symptoms that were not well treated by medication. He had recurrent dreams, flashbacks, intrusive memories, significant anxiety, anxiety attacks, difficulty concentrating due to anxious thoughts, avoidance of stimuli, avoidance of driving due to anxiety that had converted into a phobia about driving over bridges, emotional numbing, a sense of a foreshortened future, startled excessively, irritability, overate, was withdrawn socially, had sleeping difficulties, and was emotionally numb. He was retired and spent his time walking, going to the gym, watching television, and doing yard work. He denied having crying spells and suicidal ideation. The psychologist described the Veteran as experiencing a moderate to severe level of emotional distress characterized by dysphona, brooding, agitation, and anhedonia. He was extremely introverted and socially uncomfortable. He had difficulty forming close, personal relationships, was very alienated, and often felt isolated. The diagnosis was posttraumatic stress disorder, specific phobia, and major depressive disorder, single episode, moderate and a GAF score of 59 was assigned.

A March 2010 VA medical record notes an assessment of depression, stable with medication.

A July 2010 VA mental disorders examination report shows that the Veteran was still having dreams of incidents in service. There was a lot of "discontent" between the Veteran and his wife. He stated that his wife described him as being mean, but he disagreed. He indicated that his medications for treatment of psychiatric symptoms were, "... working pretty good." While he stated that he and his wife "don't get along too well...," he reported that he had great relationships with his five adult children. He reported that he was not having too many problems with friends and acquaintances. He attended basketball and baseball games and took trips to Nashville. There was no apparent impairment in thought process and communication. On mental status examination, he was fully oriented, well-groomed, and mood was presented as mildly dysphoric. He denied suicidal intent, homicidal intent, hallucinations, and delusions. Attention, memory, and judgment appeared to be within normal limits. The diagnosis was anxiety disorder, not otherwise specified, and a GAF score of 75 was assigned. The examiner concluded that the Veteran's anxiety disorder symptoms reportedly did not interfere significantly with current and past occupational and social functioning. The examiner further stated that it was unclear whether the Veteran's reported marital dysfunction was a product of his symptoms of mental disorder or more common sources of marital conflict such as cumulative annoyance or incompatibility.

An April 2012 private medical record shows that the Veteran continued to have sleep impairment. The medication he was prescribed really helped with worry. He remained social by volunteering for a high school science group and he held a competition. He was still involved in the church and church plays. He was to sing in the church on Mother's Day. He walked and went to the gym. Also, he was active with Veterans groups, to include doing volunteer work. On mental status examination, his speech was normal, he appeared well groomed, there was no physical or emotional distress, he was oriented times four, mood was euthymic, affect was mood congruent, thoughts were logical and goal-directed, he was no danger to himself or others, no panic, and there were no new flashbacks. He was assigned a GAF score of 85. 

An August 2013 VA psychiatry note shows that the Veteran felt the medication was working well for his mood. His main complaint was that he felt that his wife pushed him around and he was getting to the point that he was ready to move out. She stated the relationship has been difficult for years. On mental status examination, the Veteran denied sleep problems. Appetite was about the same and energy was "good." He was oriented times four, denied any problems with memory, and there was no noted confusion or clouding of consciousness. He noted that he discussed moving out with his kids and they encouraged him to stay. He continued to volunteer with the same organization he had been with for 25 years. Affect was noted as mood congruent, he appeared well groomed, speech was spontaneous, he felt that he was not depressed or anxious, thought process was logical and goal directed, insight and judgment were intact grossly, and he denied danger to himself or others. The assessment was PTSD by history. 

A May 2014 mental disorders examination report shows that the Veteran was diagnosed with unspecified depressive disorder. The Veteran lived with his wife of 52 years. Their relationship had always been strained and they had separate rooms. He had two sons and grandchildren. He enjoyed sports and watched on television and at the local community college. He attended church and sang in the choir. He had one close friend who lived nearby with whom he talked frequently. Current symptoms included depressed mood, anxiety, and mild memory loss. On mental status examination, the Veteran was alert and oriented, neatly groomed, and with normal speech. His thought process was logical and goal directed. The mood presented as mildly depressed with congruent affect. Hallucinations, delusions, and suicidal and homicidal ideation were denied. There was no observable impairment in attention or concentration, but the Veteran was not able to remember names of some of his previous treatment providers. Insight, judgment, and impulse control were intact. He sometimes had intrusive memories of bodies he had to load in Korea. His head got "foggy." About once every other month he had panic episodes, not full blown panic attacks, which caused him to have trouble breathing. His memory was "in and out" by his report, but his patches helped it. The examiner stated an opinion that the Veteran's current service-connected depressive disorder alone did not preclude him from securing or maintaining substantially gainful employment. His reported mood problems did not impact his ability to engage in physical or sedentary work if he so chose. The examiner stated that the opinion was based solely on the Veteran's service-connected mood disorder related functioning and did not account for any physical difficulties that he experienced, to include memory impairment which appeared to be secondary to mild dementia.

Considering the above evidence in light of the criteria listed above, the Board finds that the Veteran's symptoms fall within the schedular criteria for a 30 percent disability rating due to symptoms causing a general ability to function independently, with some impairment caused by irritability, depressed mood, anxiety, chronic sleep impairment, occasional panic attacks. The collective evidence for this period shows that the Veteran generally functioned satisfactorily, with routine behavior, self-care, and normal conversation, and was found to have flashbacks, intrusive memories, anxiety, some reports of anxiety episodes or panic attacks, difficulty concentrating, avoidance of stimuli, avoidance of driving due to anxiety that has converted into a phobia about driving over bridges, emotional numbing, sense of a foreshortened future, startles excessively, irritability, has sleeping difficulties, and is emotionally numb, all of which are consistent with the criteria for a rating of 30 percent. 

The Board emphasizes that there are no medical findings of flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of long and short-term memory (e.g., retention of only highly learned material, forgetting to complete tasks; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; together with difficulty in establishing or maintaining effective work and social relationships), or more severe symptomatology such as to warrant at least the next higher 50 percent rating. While mild memory impairment is shown, that is not shown to rise to the level contemplated in the criteria for a 50 percent rating.

Many of the Veteran's reported symptoms are included among those specifically listed in the General Rating Formula for Mental Disorders, pursuant to which the current disability rating has been assigned. 38 C.F.R. § 4.130 (2015). Importantly, the Board notes that symptoms noted in the rating schedule are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular disability rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). Symptoms comparable to those listed in the General Rating Formula could be considered in evaluating the Veteran's extent of occupational and social impairment.

Accordingly, in this case, the Board finds that the existence and severity of the Veteran's psychiatric symptoms are adequately contemplated by the relevant rating criteria. Many of the symptoms are specifically listed in the General Rating Formula for Mental Disorders, and the others are common psychiatric symptoms that, while not specifically listed, are comparable indicators of the type of occupational and social impairment contemplated in the Rating Formula. In this case, the Veteran's symptoms, as of July 6, 2009, are consistent with a 30 percent rating.

The Board also finds that the GAF score of 59 in the August 2009 private assessment is consistent with the current 30 percent rating. According to DSM-IV, GAF scores between 51 and 60 denote moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e. g., few friends, conflicts with peers or co-workers). GAF scores ranging between 71 and 80 indicate that, if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument) or no more than slight impairment in social, occupational, or school functioning. GAF scores between 81 and 90 indicate that symptoms to be absent or minimal (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members

In this case, the extent and severity of the Veteran's actual psychiatric symptoms reported during as of July 6, 2009, are suggestive of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactory, with routine behavior, self-care, and conversation normal), contemplated in the 30 percent rating for psychiatric disabilities, regardless of the GAF scores. While the assignment of a GAF score of 75 in a July 10 VA examination report and a GAF score of 85 in an April 2012 private medical record would suggest that a lower 10 percent rating may be warranted, the descriptions of the Veteran's symptomatology are the most accurate guide to identifying the severity of the psychiatric condition, and the narrative description is more persuasive than an examiner's one-time snapshot at the moment of an examination through the GAF score. 38 C.F.R. § 4.126(a) (2015). In this case, as of July 6, 2009, the reported symptomatology is consistent with no more than moderate symptoms or moderate difficulty in social, occupational, or school functioning, and some disturbances of motivation and mood, as well as difficulty in establishing and maintaining effective work and social relationships, which is also consistent with no greater impairment than that contemplated by a 30 percent rating.

In reaching the above conclusions, the Board has considered the Veteran's statements regarding the severity of his psychiatric symptoms. As a lay person, he is competent to report on factual matters of which he has first-hand knowledge, such as experiencing an increased level of psychiatric symptomatology. Washington v. Nicholson, 19 Vet. App. 362 (2005). The Veterans July 2009 statement regarding his current psychiatric symptoms serves, in part, as the basis for the assignment of a higher 30 percent rating. 

Thus, for all the foregoing reasons, the Board finds that the criteria for a 30 percent rating, but not higher, rating for a psychiatric disability, as of July 6, 2009, have been met.

In exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating. The governing norm in exceptional cases is a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular scheduler standards. 38 C.F.R. § 3.321(b) (2015). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Thun v. Peake, 22 Vet. App. 111 (2008); Fisher v. Principi, 4 Vet. App. 57 (1993). Therefore, initially, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability with the established criteria found in the Rating Schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008). If the criteria under the Rating Schedule reasonably describe a Veteran's disability level and symptomatology, then the Veteran's disability picture is contemplated by the Rating Schedule, and the assigned schedular evaluation is adequate, and no referral is required.

The Board finds that the Veteran's disability picture is not so unusual or exceptional in nature as to render his disability rating for a psychiatric disability inadequate. When comparing the disability picture of the service-connected psychiatric disability with the symptoms contemplated by the Rating Schedule, the Board finds that the Veteran's symptoms are adequately contemplated by the disability ratings for his psychiatric disability on appeal. The criteria for the disability ratings describe the Veteran's disability level and symptomatology. In addition, the evidence does not show frequent hospitalization or marked interference with employment. Therefore, the currently assigned schedular ratings are adequate and no referral is required. 


ORDER

An initial rating in excess of 10 percent for a psychiatric disability, prior to July 6, 2009, is denied.

As of July 6, 2009, a 30 percent rating, but not higher, for a psychiatric disability is granted.


REMAND

In August 2013 written correspondence, the Veteran asserted that he was exposed to pesticides while assigned to the 378 Preventive Medicine Company at Fort Sam Houston, Texas in the early 1950s. He stated that his training and assignment required him to participate in "Operation Long Horne," at Fort Hood, Texas in the early 1950s. He asserts that "pesticide was one of my jobs." The Board finds that remand is required so that the record can be developed to determine if the Veteran was exposed to herbicides during his service while assigned to the 378 Preventive Medicine Company at Fort Sam Houston, Texas, to include whether his MOS of Supply Sergeant included duties in which he was required to spray pesticides. 

The Board finds that the Veteran's claims for service connection for erectile dysfunction and for entitlement to a TDIU are inextricably intertwined with his claim on appeal for service connection for prostate cancer. Therefore, the appropriate remedy where a pending claim is inextricably intertwined with a claim currently on appeal is to remand the claim on appeal pending the adjudication of the inextricably intertwined claim. Harris v. Derwinski, 1 Vet. App. 180 (1991).

Accordingly, the case is REMANDED for the following actions:

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.

1. Request the Department of Defense (DOD) and the United States Army and Joint Services Records Research Center (JSRRC) provide information to determine whether there was documentation of any spraying, testing, storage, or usage of tactical herbicide agents at Fort Sam Houston or Fort Hood, Texas in the early 1950s, to include duties of those assigned to "Operation Long Horne," as identified by the Veteran. They should be requested to provide information as to the likelihood that the Veteran, considering his military occupation and his dates of duty and units and places of assignment, was exposed to herbicides or pesticides while performing his duties.

2. Then, readjudicate the claims. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the appropriate time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs